

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

U.S. BANCORP EQUIPMENT )
FINANCE, INC., f/k/a U.S. BANCORP )
LEASING & FINANCIAL )      Civil Action No. 05-0530
)
Plaintiff, )
)
v. )
)
RJ. RHODES TRANSIT, INC., R & S )
TRANSPORTATION SERVICES, INC., )
and ROBERT J. RHODES )
)
Defendants. )
)

## COMPLAINT

AND NOW, comes Plaintiff, U.S. Bancorp Equipment Finance, Inc., f/k/a U.S. Bancorp

Leasing & Financial ("USB"), by and through its undersigned counsel, and sets forth the

following Complaint against Defendants, R.J. Rhodes Transit, Inc. ("RJR Transit"), R & S

Transportation Services, Inc. ("R&S") and Robert J. Rhodes ("Rhodes"), stating as follows:

## PARTIES

1.      USB is an Oregon corporation having a principal place of business at 13010 S.W.

68th Parkway, Portland, Oregon 97223.

2.      RJR Transit is a Pennsylvania corporation having a principal place of business at

2990 Duss Avenue, Ambridge, Beaver County, Pennsylvania 15003.

3.      R&S is a Pennsylvania corporation having a principal place of business at 2990

Duss Avenue, Ambridge, Beaver County, Pennsylvania 15003.

4.      Rhodes is an adult individual who resides at 1295 S. Elm St., Monaca, Beaver County, Pennsylvania 15061.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1332, because there is diversity of citizenship between Plaintiff and Defendants, and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6.      This Court is an appropriate venue for this action, pursuant to 28 U.S.C. § 1391, because, *inter alia*, Defendants reside in this district, and a substantial part of the events giving rise to the claims at issue in this action occurred in this district.

## FACTUAL BACKGROUND

### The Lease and the Guaranties

7.      On or about March 22, 2000, RJR Transit entered into a written Commercial Transportation Lease Agreement (the "Lease Agreement") with ABC Bus Leasing, Inc. ("ABC"), a Florida corporation. A true and correct copy of the Lease Agreement is attached hereto as Exhibit 1.

8.      Pursuant to the Lease Agreement, ABC leased, among other equipment, One (1) 1995 MCI 102DL3 Motor Coach with Serial No. 1M8PDMPA5SP047755 (the "Motor Coach") to RJR Transit. *See* Exhibit A to the Lease Agreement (Exhibit 1). The capitalized cost of the Motor Coach was $265,000.

9.      Pursuant to the Lease Agreement, RJR Transit was obligated to make one rental payment to ABC in the amount of $2,500 on April 1, 2000, followed by sixty (60) consecutive

monthly rental payments in the amount of $5,175 commencing on June 1, 2000. *See* Exhibit C to the Lease Agreement (Exhibit 1).

10.     At the end of the lease term, if RJR Transit elected not to purchase the Motor Coach, RJR Transit was obligated to make a terminal rental adjustment payment to ABC in the amount of 10% of the capitalized cost of the Motor Coach, which amount equals $26,500. *See* Lease Agreement ¶¶ 11, 12 (Exhibit 1); Exhibit S to the Lease Agreement (Exhibit 1).

11.     In total, RJR Transit was obligated to pay $339,500 under the Lease Agreement, which amount includes the lease payments and the terminal rental adjustment, but does not include any late fees, or fees, costs and interest related to default.

12.     On or about March 22, 2000, R&S executed a guaranty (the "R&S Guaranty") in favor of ABC, guaranteeing the payment and performance by RJR Transit of RJR Transit's obligations under the Lease Agreement and all related schedules and exhibits to the Lease Agreement. A true and correct copy of the R&S Guaranty is attached hereto as **Exhibit 2**.

13.     On or about March 22, 2000, Rhodes executed a guaranty (the "Rhodes Guaranty") in favor of ABC, guaranteeing the payment and performance by RJR Transit of RJR Transit's obligations under the Lease Agreement and all related schedules and exhibits to the Lease Agreement. A true and correct copy of the Rhodes Guaranty is attached hereto as **Exhibit 3**.

14.     On or about November 8, 1999, USB entered into a Master Assignment Agreement with ABC that allowed for, among other things, the assignment by ABC to USB of the interests and rights possessed by ABC with respect to certain lease agreements between ABC

and third parties. A true and correct copy of the Master Assignment Agreement is attached hereto as Exhibit 4.

15.     On or about March 24, 2000, pursuant to the Master Assignment Agreement, USB entered into a Specification of Assigned Interest with ABC that assigned the interests and rights possessed by ABC with respect to the Lease Agreement to USB. By virtue of the Specification of Assigned Interest, all of the contractual duties owed by RJR Transit to ABC under the Lease Agreement became contractual duties owed by RJR Transit to USB. A true and correct copy of the Specification of Assigned Interest is attached hereto as Exhibit 5.

### Defaults Under the Lease and Guaranties

16.     RJR Transit made the first $2,500 lease payment due USB and made the following ten (10) lease payments of $5,175 due USB.

17.     On April 27, 2001, RJR Transit made a partial lease payment in the amount of $3,694.28 for the lease payment due USB on April 1, 2001.

18.     RJR Transit has not made monthly rental payments due under the Lease Agreement since the April 27, 2001 partial monthly rental payment.

19.     RJR Transit has made only 10.71 of the sixty (60) monthly $5,175 rental payments to USB. In total, RJR Transit has paid only $57,944.28 in monthly rental payments to USB.

20.     On or about mid-July 2001, RJR Transit surrendered the Motor Coach to ABC.

21.     On March 28, 2002, USB mailed, by certified mail, Notices of Private Sale regarding the Motor Coach to RJR Transit, R&S and Rhodes informing the Defendants that USB intended to sell, lease or otherwise dispose of the Motor Coach by private sale after April 8,

2002, if RJR Transit, R&S and/or Rhodes failed to redeem the Motor Coach before that date.
True and correct copies of the Notices of Private Sale are attached hereto as **Exhibit 6.**

22.     The Defendants failed to redeem the Motor Coach in the prescribed time period.

23.     The Motor Coach was sold in a commercially reasonable manner by USB.

24.     USB's net proceeds from the sale of the Motor Coach were $179,533.83.

25.     RJR Transit is in default of its obligations under the Lease Agreement, because,
*inter alia*, it failed to make the required monthly rental payments due under the Lease Agreement
since April 27, 2001.

26.     Upon RJR Transit's default, USB was entitled to recover from Defendants the
remedies set forth in paragraph 17 of the Lease Agreement, in addition to any other remedies
provided under the Lease Agreement, the R&S Guaranty and the Rhodes Guaranty, and
permitted under applicable laws.

27.     The Default, Remedies provision of the Lease Agreement provides that damages
resulting from default:

> "[s]hall include but not be limited to: the full amount of rentals
> then due and unpaid, the Stipulated Loss Value of the Vehicles
> calculated pursuant to Exhibit S as of the rental date immediately
> preceding the default, and all other amounts of any nature due
> under this Agreement, including, without limitation any amounts
> due as terminal rental adjustments, together with all costs of
> collection and repossession including attorneys' fees and collection
> fees."

Lease Agreement ¶ 17 (Exhibit 1).

28.     From the date of RJR Transit's first failure to make a required monthly rental
payment under the Lease Agreement to the present date, USB and its counsel repeatedly have

contacted Defendants, by telephone and by letter, to demand that Defendants honor the obligations due USB under the Lease Agreement, the R&S Guaranty and the Rhodes Guaranty.

29.   On March 21, 2005, counsel for USB sent a demand letter to Defendants via certified mail, a copy of which is attached hereto as Exhibit 7.  Defendants failed to respond to the demand letter.

30.   Despite USB's repeated efforts to resolve this matter prior to resorting to litigation, Defendants have failed and refused to honor their obligations to USB under the Lease Agreement, the R&S Guaranty and the Rhodes Guaranty.

## COUNT I
### Breach of Contract

(U.S. Bancorp Equipment Finance, Inc., f/k/a U.S. Bancorp Leasing & Financial
v. R.J. Rhodes Transit, Inc.)

31.   Plaintiff incorporates all of the preceding paragraphs of this Complaint by reference as if fully set forth herein.

32.   RJR Transit improperly and unjustifiably breached the Lease Agreement by, *inter alia*, failing to make monthly rental payments to USB for the Motor Coach since April 27, 2001, and failing to pay various late fees and interest accrued.

33.   All conditions precedent to recovery have been satisfied, waived or are otherwise inapplicable.

34.   As a direct and proximate result of the aforesaid breach, Plaintiff has suffered money damages in an amount in excess of the jurisdictional basis of $75,000.

WHEREFORE, Plaintiff, U.S. Bancorp Equipment Finance, Inc., requests judgment in its favor against Defendant, R.J. Rhodes Transit, Inc., for money damages in an amount in excess of

$75,000, together with interest, attorney's fees, costs of suit, and such further relief as this Court deems just and proper.

## COUNT II

### Breach of Contract

#### (U.S. Bancorp Equipment Finance, Inc., f'k/a U.S. Bancorp Leasing & Financial v. R & S Transportation Services, Inc.)

35.     Plaintiff incorporates all of the preceding paragraphs of this Complaint by reference as if fully set forth herein.

36.     R&S improperly and unjustifiably breached the R&S Guaranty by, *inter alia*, failing and refusing to pay to USB the unpaid sums due USB, as a result of RJR Transit's default of the Lease Agreement.

37.     All conditions precedent to recovery have been satisfied, waived or are otherwise inapplicable.

38.     As a direct and proximate result of the aforesaid breach, Plaintiff has suffered money damages in an amount in excess of the jurisdictional basis of $75,000.

WHEREFORE, Plaintiff, U.S. Bancorp Equipment Finance, Inc., requests judgment in its favor against Defendant, R & S Transportation Services, Inc., for money damages in an amount in excess of $75,000, together with interest, attorney's fees, costs of suit, and such further relief as this Court deems just and proper.

## COUNT III

### Breach of Contract

(U.S. Bancorp Equipment Finance. Inc., f/k/a U.S. Bancorp Leasing & Financial
v. Robert J. Rhodes)

39.     Plaintiff incorporates all of the preceding paragraphs of this Complaint by
reference as if fully set forth herein.

40.     Rhodes improperly and unjustifiably breached the Rhodes Guaranty by, *inter alia*,
failing and refusing to pay to USB the unpaid sums due USB, as a result of RJR Transit's default
of the Lease Agreement.

41.     All conditions precedent to recovery have been satisfied, waived or are otherwise
inapplicable.

42.     As a direct and proximate result of the aforesaid breach, Plaintiff has suffered
money damages in an amount in excess of the jurisdictional basis of $75,000.

WHEREFORE, Plaintiff, U.S. Bancorp Equipment Finance, Inc., requests judgment in its
favor against Defendant, Robert J. Rhodes, for money damages in an amount in excess of

$75,000. together with interest, attorney's fees, costs of suit, and such further relief as this Court deems just and proper.

Respectfully submitted,

LEWIS & SARGENT LLC

By: _____

Dennis J. Lewis, Esq.
Pa. I.D. # 21405
William J. Labovitz, Esq.
Pa. I.D. # 77018

2793 Noblestown Road
Pittsburgh, PA 15205-4258
(412) 928-0101

Counsel for Plaintiff,
U.S. Bancorp Equipment Finance, Inc.,
f/k/a U.S. Bancorp Leasing & Financial

Dated: April 22, 2005

## Commercial Transportation Lease Agreement

This Lease Agreement (the "Agreement") effective as of ___March 22, 2000___, entered into by and between ABC Bus Leasing, Inc., a Florida corporation ("Lessor"), and the undersigned the ("Lessee"). If more than one party executes this Agreement as Lessee, each shall be jointly and severally liable hereunder.

1. **LEASE; DISCLAIMER.** Lessor hereby agrees to lease to Lessee and Lessee hereby agrees to lease from Lessor certain Vehicles for us in its business. Lessee's lease of a Vehicle shall be effective on the date Lessee accepts the Vehicle for Lease hereunder. Lessor hereby assigns the manufacturer's warranty to Lessee for the lease Term. LESSEE AGREES THAT THE LESSOR IS NOT THE MANUFACTURER, DESIGNER OR DISTRIBUTOR OF, THE VEHICLES AND THAT EACH VEHICLE IS OF A DESIGN SELECTED BY LESSEE AND SUITABLE FOR ITS PURPOSES. ALL VEHICLES ARE LEASED "AS IS". LESSOR MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO ANY VEHICLE INCLUDING, BUT NOT LIMITED TO: THE MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF A VEHICLE; THE DESIGN, QUALITY OR CAPACITY OF A VEHICLE; OR COMPLIANCE OF A VEHICLE WITH APPLICABLE LAW.

2. **DELIVERY.** Lessee shall inspect a Vehicle at the location of delivery. Lessee's removal of a Vehicle from such location shall constitute acceptance of the Vehicle and Lessee's warranty to Lessor that the Vehicle conforms to Lessee's specifications. Lessee agrees that Lessee's obligation to pay rent and other amounts with respect to such Vehicle shall be unconditional and that Lessee shall not be entitled to any reduction of, or setoff against, such amounts (provided, however, that any such payment shall not prejudice Lessee's right to claim adjustment or reimbursement).

3. **TERM OF AGREEMENT.** This Agreement shall commence on the date set forth above, and continue until canceled or terminated by either party upon 30 days' written notice to the other. Notwithstanding termination, this Agreement shall remain in effect with respect to each Vehicle then leased until all terms and conditions of this Agreement are satisfied.

4. **LEASE TERM.** The noncancelable minimum Lease Term for each Vehicle is 367 days beginning upon the first periodic period payment date. Thereafter, the Lease Term may be renewed each payment period, provided that such renewals shall not extend the Lease term beyond the Lease term set in Exhibit C hereto.

5. **OPERATION.** Lessee shall operate the Vehicles solely in the United States (Lessee acknowledges that breach of such covenant could adversely affect Lessor's assumed tax benefits and thereby subject Lessee to liability therefore) and in accordance with applicable federal, state and local law governing the use, operation, maintenance or alteration of the Vehicles. Lessee agrees to repair the Vehicles and to maintain them in safe and good mechanical condition and running order. All additions to a Vehicle become the property of Lessor and shall be surrendered with the Vehicle. NO VEHICLES MAY BE USED TO TRANSPORT HAZARDOUS SUBSTANCES.

6. **NET LEASE.** Lessee covenants that it will pay all costs, expenses, fees, charges, fines, interest, and taxes, including, without limitation, sales, property and use taxes, incurred in connection with the Vehicle's titling, registration, delivery, purchase, sale, rental, modification, and arising from the ownership, operation or use of the Vehicle during its Lease Term regardless of when assessed or payable. If Lessor pays any of the foregoing amounts, Lessee shall promptly reimburse Lessor and pay Lessor's then current administrative charge.

7. **TITLE; REGISTRATION.** Lessee, at its own expense, will obtain all required registration plates, permits or licenses for the Vehicles. If Lessor pays for any of the foregoing, Lessee will promptly reimburse Lessor. Lessee agrees to property title and register the Vehicles in Lessor's name and, if Lessee is in possession of the title, to promptly deliver the title to Lessor. Lessee will bear all costs and expenses, including Lessor's administrative fee, to correct incorrect titles.

8. **RENTAL CHARGES.** Lessee will pay rental for the Vehicles in accordance with the relevant Exhibits, as well as all other rental charges provided for in this Agreement. Notwithstanding any provisions hereof to the contrary, the failure of Lessee to receive an invoice for such payments or to receive invoices on a timely basis shall not excuse or otherwise modify payment terms provided for herein or in Exhibits hereto.

Lessee acknowledges that the periodic rental charges are based on a presumed after-tax return to Lessor. If any changes in federal or state tax laws or regulations (including a change in corporate income tax rate) cause Lessor's after-tax return to be reduced or impact the ability of Lessor to realize the full tax benefits contemplated herein, Lessor may, in compensation, prospectively adjust the periodic rental charges.

9. **PAYMENT TERMS.** Time is of the essence. Lessee shall pay to Lessor a late payment charge in the amount of the greater of (i) $25.00 or (ii) 5% per month or fraction thereof of any invoice, the payment of which is not in the possession of Lessor on or before the tenth (10th) day after the due date of the payment (or if such 10th day falls on a weekend or holiday, then the immediately preceding business day), but in no event shall such late charges exceed the highest legal rate. It is the intent of Lessor that it not receive directly or indirectly any amount in excess of that amount which may be legally paid. Any excess charges will be credited to Lessee or, upon request of Lessee, refunded. Lessee agrees to carefully review each invoice or other statement provided by Lessor. If Lessee identifies a billing error, Lessee will advise Lessor promptly and in such event, Lessor's sole liability and Lessee's exclusive remedy shall be appropriate adjustments in Lessee's account. All charges are based upon Lessor's standard operating routines, existing business policy and computer systems capabilities.

10. **SURRENDER OF VEHICLES.** At the end of the minimum Lease Term. Lessee may, and at the end of the Lease Term, Lessee shall, upon reasonable written notice to Lessor, either purchase the Vehicle for its then fair market value or return the Vehicle to Lessor by delivering the Vehicle to Lessor at a mutually agreed location. Upon surrender or, if not surrendered, at final disposition, the Vehicle shall be in good, safe and lawful operating condition. Surrender of the Vehicle shall not be effective until Lessor has actual physical possession of the Vehicle and has received all license plates, registration certificates, documents of title, odometer and damage disclosures and other documentation necessary for the sale of the Vehicle. If, upon Lessee request, Lessor accepts an offer to purchase a Vehicle from a Lessee or a purchaser identified by Lessee and Lessor does not take actual physical possession of the Vehicle, neither surrender nor sale shall be deemed to occur until Lessor delivers the certificate of title and receives payment. Any personal property in a Vehicle upon surrender shall be deemed abandoned and may be disposed of by Lessor without liability.

11. **SALE OF VEHICLES.** In the event Lessee elects not to exercise its purchase option, Lessor shall, and Lessee may, solicit from prospective purchasers wholesale cash bids for Vehicles. Such Vehicles shall be sold in a commercially reasonable manner. From the sales proceeds, Lessor shall deduct all unamortized acquisition fees, sales expenses paid or incurred by Lessor in undertaking such sale and any late fees, taxes or other amounts due with respect to the Vehicles, regardless of when assessed or payable, the balance remaining to constitute the Net Proceeds which shall be payable to Lessor. If Lessor sells any vehicle owned by Lessee or a third party, Lessee agrees that the sale of such vehicle shall be subject to the indemnity herein and to pay Lessor's then current sale fee.

12. **TERMINAL RENTAL ADJUSTMENT.** As an incentive to the Lessee to maintain the value of the Vehicle by good maintenance, repair and careful use during its Lease Term, the parties agree that the enhancement or reduction in value shall be compensated as follows:

   a. **Refund of Rental.** If the Net Proceeds from the sale to either Lessee or a third party exceed the Stipulated Loss Value (as defined in Exhibit S), Lessor shall retain an amount equal to the Stipulated Loss Value, and remit the excess to Lessee as a refund of rental.

b. **Rental Charge.** If the Net Proceeds from the sale to either Lessee or a third party are less than the Stipulated Loss Value, Lessee shall pay Lessor the amount of the difference between the Net Proceeds and the Stipulated Loss Value.

13. **INSURANCE.** Before delivery of any Vehicle, Lessee shall purchase from a responsible insurance company acceptable to Lessor and Lessee shall maintain, during the Lease Term of each Vehicle, the following coverages and deliver to Lessor a certificate thereof:

   a. **Liability Insurance** naming Lessor as an Additional Insured with limits of coverage as Lessor may require, but in no event less than $1 million combined single limit per occurrence ($5 million for Vehicles capable of transporting nine (9) or more passengers). No self-insured retention or deductible is permissible unless approved in writing by Lessor.

   b. **Comprehensive and collision insurance** naming Lessor as Loss Payee with coverage for the actual cash value of each Vehicle and subject to a deductible no greater than the following amounts unless approved by Lessor: $5,000 for intercity coaches; $2,500 for school buses, shuttle buses and vans and ambulances; $1,000 for medium and heavy duty trucks and trailers, tool trucks, tow trucks and tire service trucks. Lessee shall also obtain no-fault insurance complying with applicable legal requirements. Lessee shall bear all risk of loss, damage or destruction to the Vehicle (which may exceed actual cash value), however caused, from the time of acceptance until surrender to Lessor.

   c. **Conditions.** All insurance policies shall provide for 30 days' prior written notice to Lessor of any cancellation or reduction in coverage. Lessor has no obligation to examine insurance certificates or to advise Lessee if its insurance is not in compliance with this Agreement. Lessee authorizes Lessor to endorse Lessee's name to insurance checks related to the Vehicles and to take any actions to pursue insurance claims and recover payments if Lessee fails to do so.

   d. **Casualty.** In the event for any reason a Vehicle becomes worn out, lost, stolen, destroyed or unusable (herein, each, a "Loss"), on the rental payment date next succeeding the occurrence of such Loss, Lessee shall pay to Lessor the sum of (x) the Stipulated Loss Value of the affected Vehicle (determined as of the rental payment date immediately preceding the date of such Loss), and (y) all rent and other amounts which are then due under this Agreement. Upon payment of all such sums, the term of this lease as to such affected Vehicle shall terminate. So long as no event of default shall have occurred and be continuing, any insurance proceeds attributable to such Vehicle shall be payable to reimburse Lessee for the payments required hereunder up to the amount of the Stipulated Loss Value. Lessee understands that such Stipulated Loss Value may exceed the actual cash value of the Vehicle as determined by the insurer of the Vehicle and that Lessee remains required to pay the entire amount due hereunder.

14. **INDEMNITY.** LESSEE WILL INDEMNIFY AND DEFEND LESSOR (INCLUDING ANY OF ITS AFFILIATES) AGAINST ANY LOSS, LIABILITY OR CLAIM DIRECTLY OR INDIRECTLY RELATING TO THE OWNERSHIP, LEASE, MAINTENANCE, USE, CONDITION (INCLUDING BUT NOT LIMITED TO, PATENT AND LATENT DEFECTS WHETHER OR NOT DISCOVERABLE, PRODUCT LIABILITY CLAIMS OR THE CONDITION OF THE VEHICLE AT SURRENDER) OR SURRENDER OF ANY VEHICLE BETWEEN THE TIME OF DELIVERY TO LESSEE AND THE TIME OF SURRENDER. IF LESSOR SELLS ANY VEHICLE TO LESSEE, ANY OF ITS EMPLOYEES OR A PURCHASER FROM WHOM LESSEE OBTAINS AN OFFER, LESSEE'S COVENANTS OF INDEMNITY WITH RESPECT TO SUCH VEHICLE SHALL CONTINUE. THIS INDEMNITY IS ABSOLUTE AND UNCONDITIONAL AND INCLUDES CLAIMS OF NEGLIGENCE, STRICT LIABILITY, ENVIRONMENTAL LIABILITY AND BREACH OF WARRANTY, BUT DOES NOT EXTEND TO CLAIMS OR LIABILITY ARISING FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF LESSOR, ITS AGENTS OR EMPLOYEES. THIS INDEMNITY SHALL SURVIVE THE TERMINATION OF THIS AGREEMENT.

15. **NATURE OF AGREEMENT.** THE PARTIES INTEND ALL LEASES OF VEHICLES HEREUNDER TO BE TRUE LEASES. Lessee has no right, title or interest in and to any Vehicle leased hereunder except as Lessee, and Lessee has no option to purchase any Vehicle for any amount less than its fair market value. Lessor has the right to mark the Vehicle at any time stating its interest as owner and to receive and retain compensation related to the Vehicles from manufacturers, suppliers and vendors. Without prejudice to the intention of the parties that this Agreement be a true lease, Lessee hereby grants Lessor a security interest in the Vehicles, all vehicles and other equipment and property subject to other leases or loans with Lessor, and all proceeds, accessions, documents, instruments, accounts, chattel paper, equipment and general intangibles related thereto to secure all of Lessee's obligations under this or any other agreement with Lessor. Lessee hereby grants Lessor its power of attorney to act for and on behalf of Lessee in all matters pertaining to the titling and registration of Vehicles and the filing, recording or perfecting of Lessor's interest and title in the Vehicles, including execution of Uniform Commercial Code financing statements, and agrees to execute such other documents as may be necessary to effect or evidence such grant. A photocopy or other reproduction of this Agreement shall be sufficient as a financing statement.

16. **FINANCIAL STATEMENTS; INSPECTIONS.** The creditworthiness of Lessee and any guarantor is a material condition to this Agreement. Lessee shall provide Lessor with financial information reasonably requested by and satisfactory to Lessor each year of this Agreement. Nothing herein shall be construed to require Lessor to lease any vehicle. Lessor may inspect the Vehicles and related records at any time upon reasonable notice.

17. **DEFAULT; REMEDIES.** If Lessee shall fail to make the payments, maintain insurance coverage or title any Vehicle properly and in a timely manner, all as herein required or after 10 days' written notice shall fail to perform any of its other covenants under this Agreement, or Lessee or any guarantor shall (i) make an assignment for the benefit of creditors, or suffer a receiver or trustee to be appointed, or file or suffer to be filed any petition under any bankruptcy or insolvency law of any jurisdiction, or (ii) discontinue business; or (iii) dissolve, terminate, cease its corporate or partnership existence or die; or (iv) be in default under any other agreement it may have with Lessor or any parent, subsidiary or affiliate of Lessor; or (v) suffer a material adverse change in operating or financial condition which impairs Lessee's ability to perform its obligations hereunder or Lessor's title to or rights in the Vehicles; or (vi) make any representation or warranty herein, or in any document delivered to Lessor in connection herewith, which shall prove to be false or misleading in any material respect; or (vii) merge, consolidate, or undergo a change in controlling ownership; or (viii) be in default under any other agreement it may have with Lessor or any parent, subsidiary or affiliate of Lessor; then in such event Lessee shall be in default under this Agreement. A default under the terms of this Agreement shall constitute a default under any other agreement Lessee has with Lessor, or any parent, subsidiary or affiliate of Lessor. Lessor shall have the right to offset any amounts due to Lessee against amounts due to Lessor and all rights and remedies available at law or in equity including, without limitation, the right to repossess any and all Vehicles leased hereunder (and for that purpose, Lessor or its agents may enter upon any premises owned or under the control of Lessee or any of its employees or affiliates). Notwithstanding repossession and sale of any Vehicle, Lessor may recover from Lessee all damages sustained as a result of Lessee's default, and is not accountable to Lessee for any proceeds of any such sale. Such damages shall include but not be limited to: the full amount of rentals then due and unpaid, the Stipulated Loss Value of the Vehicles calculated pursuant to Exhibit S as of the rental payment date immediately preceding the default, and all other amounts of any nature due under this Agreement, including, without limitation any amounts due as terminal rental adjustments, together will all costs of collection and repossession including attorneys' fees and collection fees. All of Lessor's rights and remedies shall be cumulative and not exclusive.

18. **NO CONSEQUENTIAL DAMAGES.** In no event shall Lessor be liable for any loss of profits, other consequential damages or inconvenience resulting from any delay in delivery, theft, damage to, loss of, defect in or failure of any Vehicle, or the time consumed in recovering, repairing, adjusting, servicing, or replacing same and there shall be no abatement or apportionment of rental during such time. EXCEPT WITH RESPECT TO LESSEE'S OBLIGATIONS OF INDEMNITY HEREUNDER, EACH PARTY AGREES THAT: ITS SOLE AND EXCLUSIVE REMEDY FOR ANY MATTER OR CAUSE OF ACTION RELATED DIRECTLY OR INDIRECTLY TO ANY BREACH BY THE OTHER PARTY OF THIS AGREEMENT

SHALL BE A CONTRACT ACTION; DAMAGES SHALL BE LIMITED TO ACTUAL AND DIRECT DAMAGES INCURRED; AND NO INDIRECT, CONSEQUENTIAL OR PUNATIVE DAMAGES WILL BE CLAIMED.

19. **ASSIGNMENTS.** LESSEE SHALL NOT ASSIGN, SUBLET, LIEN, ENCUMBER, OR TRANSFER ANY INTEREST IN ANY OF THE VEHICLES LEASED HEREUNDER OR ANY INTEREST IN THIS AGREEMENT TO ANY PARTY WITHOUT THE WRITTEN CONSENT OF LESSOR. ANY SUCH CONSENT BY LESSOR SHALL NOT RELIEVE LESSEE OF ITS OBLIGATIONS AND LIABILITIES. Lessor may assign all or any part of its right, title and interest in this Agreement or the Vehicles, including all receivables.

20. **RELATED ENTITLES.** Any Vehicles leased or operated by present or future subsidiaries, parents or affiliates of Lessee shall be within the terms and conditions of this Agreement, unless covered by a separate agreement with such subsidiary, parent or affiliate, and Lessee agrees that, in the event such subsidiary, parent or affiliate does not perform according to the terms and conditions of this Agreement, Lessee guarantees such performance.

21. **WAIVER OF JURY TRIAL.** BOTH PARTIES TO THIS AGREEMENT HEREBY WAIVE ANY AND ALL RIGHT TO ANY TRIAL BY JURY IN ANY ACTION OR PROCEEDINGS DIRECTLY OR INDIRECTLY HEREUNDER.

22. **GOVERNING LAW.** THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL IN ALL RESPECTS BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF FLORIDA (WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES OF SUCH STATE), INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, REGARDLESS OF THE LOCATION OF THE VEHICLES. THE PARTIES FURTHER AGREE THAT ALL ACTIONS OR PROCEEDINGS ARISING, DIRECTLY OR INDIRECTLY, FROM THIS AGREEMENT, SHALL BE LITIGATED, AT THE OPTION OF LESSOR, IN COURTS HAVING SITUS WITHIN THE STATE OF FLORIDA, AND LESSEE HEREBY CONSENTS TO THE PERSONAL JURISDICTION OVER LESSEE BY ANY LOCAL, STATE OR FEDERAL COURT SELECTED BY LESSOR THAT IS LOCATED WITHIN THE STATE OF FLORIDA. LESSEE WAIVES ANY OBJECTION TO VENUE IN ANY SUCH ACTION AND AGREES NOT TO DISTURB SUCH CHOICE OF FORUM BY LESSOR. LESSEE HEREBY CONSENTS TO SERVICE OF PROCESS BY MAIL AND THAT SUCH SERVICE BY MAILING SHALL CONSTITUTE DUE AND PERSONAL SERVICE UPON LESSEE.

23. **ODOMETER DISCLOSURE STATEMENT.** Federal law (and State law, if applicable) requires that Lessee as lessee disclose, and Lessee shall disclose, the mileage of each Vehicle to Lessor in connection with the transfer of ownership of the Vehicle. Failure to complete an odometer disclosure statement or making a false statement may result in fines and/or imprisonment. LESSEE AGREES TO PAY AN ADMINISTRATIVE FEE IF LESSEE FAILS TO PROVIDE A REQUIRED ODOMETER OR DAMAGE DISCLOSURE STATEMENT AT TIME OF SURRENDER.

24. **MODIFICATIONS.** This Agreement, its Exhibits, Schedules and amendments contain the entire understanding of the parties and merge all oral understandings. Purchase orders relating to Vehicles may be issued by Lessee for administrative convenience, but are subject to the terms and conditions of this Agreement and shall not amend or supplement it. ANY MODIFICATIONS, CHANGES, OR AMENDMENTS MAY BE MADE ONLY IN A WRITING DULY SIGNED BY LESSEE AND LESSOR. FAILURE OF EITHER PARTY TO ENFORCE ANY RIGHT GRANTED HEREIN SHALL NOT BE DEEMED A WAIVER OF SUCH RIGHT.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be signed by duly authorized representatives.

LESSOR:                                              LESSEE:

ABC BUS LEASING, INC.                               R.J. RHODES TRANSIT, INC.

By: _____                By: X_____
                                                         Robert J. Rhodes

Its: _____Vice President_____             Its: _____President_____

Address: 25 4th Street N.W.                         Address: 2990 Duss Avenue
          Faribault, MN  55021                                Ambridge, PA  15003

## EXHIBIT A

### Acceptance Notice

### To Schedule No. 001

Dated This _____3/22/2000_____

This Exhibit A is part of and subject to the Lease Agreement between ABC Bus Leasing, Inc.("LESSOR") and the undersigned ("LESSEE").

| Quantity | Year | Manufacturer | Serial No. | Model and Type of Equipment |
|---|---|---|---|---|
| One (1) | 1995 | MCI | 1M8PDMPASSP047755 | 102DL3 motor coach |

The undersigned hereby confirms to LESSOR that the Vehicles referred to above have been delivered to and have been received by the undersigned; that all installation or other work necessary prior to the use thereof has been completed; that said Vehicles have been examined and/or tested and are in good operating order and condition and are in all respects satisfactory to the undersigned; and that said Vehicles have been fully accepted by the undersigned.   LESSEE:   IF YOU EXECUTE THIS ACCEPTANCE NOTICE WITHOUT INSPECTING THE VEHICLES REFERRED TO HEREIN, YOU ASSUME ALL RESPONSIBILITY FOR ANY RESULTING LIABILITY AND ALL OF THE FOREGOING STATEMENTS WILL BE PRESUMED TRUE.

The Vehicles immediately listed above are located at:___2990  Duss  Avenue,  Ambridge,  PA 15003__ . The Vehicles will be titled and registered at this location.

LESSEE:

**R.J. RHODES TRANSIT, INC.**

By: X _____
        Robert J. Rhodes

Its:_____President_____

Date: X _03/22/00_____

**EXHIBIT C**
**Rental Schedule No. 001**
**Uneven Rentals**
Dated This_____

This Exhibit C is a part of and subject to that certain Lease Agreement (hereinafter the "Agreement"), dated __March 22, 2000__, between the LESSOR and the LESSEE set forth below.

| Number of Units | Capitalized Lessors Cost per Unit | Manufacturer | VIN Number | Model and Type of Equipment |
|---|---|---|---|---|
| One (1) | $265,000.00 | MCI | 1M8PDMPA5SP047755 | 102DL3 motor coach |

Lease Term (In Months, exclusive of any interim rental period):   62

Mileage allowance:    N/A
Excess mileage charge: N/A

The Capitalized Cost of each Vehicle is computed by adding the following amounts:

    (i)   The invoice price of the Vehicle including sales tax, if applicable; and
    (ii)  The invoice price of any authorized additions or modifications to the Vehicle made pursuant to LESSEE's request.

The Capitalized Cost of the Vehicle(s) is:  $265,000.00

LESSEE shall pay to LESSOR the following rentals as specified herein:

1) Interim Rent: An amount equal to __Not Applicable__—Dollars ($N/A) per day for the number of days from the acceptance date to, but not including, the first day of the first billing period, (such period being the interim rental period) due and payable on the Lease Commencement Date.

2) Basic Term Rent: Commencing on __April 1, 2000__, and on the same day of each month thereafter, LESSEE agrees to pay to LESSOR __Sixty-two (62)__ consecutive monthly rental payments as follows:

| Payment(s) | In the Amount of |
|---|---|
| 1 – 1 | $2,500.00 |
| 2 – 2 | $   0.00 |
| 3 – 62 | $5,175.00 |

3) Advance Rent: Upon execution of this Exhibit, LESSEE agrees to pay to LESSOR the total amount of __Two Thousand Five Hundred and no/100__—Dollars ($2,500.00) of which __Two Thousand Five Hundred and no/100__—Dollars ($2,500.00) will be applied to the first rental as it becomes due and payable.

LESSOR:                                              LESSEE:

ABC BUS LEASING, INC.                               R.J. RHODES TRANSIT, INC.

By:_____                            By:_____
                                                       Robert J. Rhodes

Title:   Vice President                             Title:   President

## EXHIBIT S
## STIPULATED LOSS VALUES

This Exhibit S is a part of and subject to that certain Commercial Transportation Lease Agreement (hereinafter the "Agreement"), dated  3/22/00 , between the LESSOR and the LESSEE set forth below.

LESSOR and LESSEE agree that the Stipulated Loss Value of any of the Vehicles referred to in the Exhibit A dated  3/22/00 , shall be an amount equal to the product of (i) the Capitalized Cost (as set forth in the relevant Exhibit C) and (ii) the percentage indicated below opposite the number of rental payments that have been made for such Vehicle.

| Payment | Percentage | Payment | Percentage |
|---------|-----------|---------|-----------|
| 12 | 92.69% | 42 | 45.32% |
| 13 | 91.27% | 43 | 43.63% |
| 14 | 89.84% | 44 | 41.93% |
| 15 | 88.40% | 45 | 40.22% |
| 16 | 86.95% | 46 | 38.50% |
| 17 | 85.50% | 47 | 36.77% |
| 18 | 84.04% | 48 | 34.53% |
| 19 | 82.57% | 49 | 32.78% |
| 20 | 81.09% | 50 | 31.02% |
| 21 | 79.60% | 51 | 29.25% |
| 22 | 78.10% | 52 | 27.47% |
| 23 | 76.60% | 53 | 25.68% |
| 24 | 74.59% | 54 | 23.88% |
| 25 | 73.07% | 55 | 22.06% |
| 26 | 71.53% | 56 | 20.24% |
| 27 | 70.00% | 57 | 18.40% |
| 28 | 68.45% | 58 | 16.56% |
| 29 | 66.89% | 59 | 14.70% |
| 30 | 65.33% | 60 | 12.83% |
| 31 | 63.75% | 61 | 10.95% |
| 32 | 62.17% | 62 | 10.00% |
| 33 | 60.58% | | |
| 34 | 58.97% | | |
| 35 | 57.36% | | |
| 36 | 55.24% | | |
| 37 | 53.61% | | |
| 38 | 51.97% | | |
| 39 | 50.32% | | |
| 40 | 48.66% | | |
| 41 | 46.99% | | |

ABC Bus Leasing, Inc.

(LESSOR)

By _____

Its _____
    Vice President

R.J. Rhodes Transit, Inc.

(LESSEE)

By _____

Its _____
    Robert J. Rhodes
    President

## CORPORATE GUARANTY

Date: X 05/22/00

ABC Bus Leasing, Inc.
25 4th Street N.W.
Faribault, MN 55021

    To induce you to enter into, purchase or otherwise acquire, now or at any time hereafter, any promissory notes, security agreements, chattel mortgages, pledge agreements, conditional sale contracts, lease agreements, and/or any other documents or instruments evidencing, or relating to, any lease, loan, extension of credit or other financial accommodation (collectively "Account Documents" and each an "Account Document") to __R.J. Rhodes Transit, Inc.__, a ____Corporation__ organized and existing under the laws of the State of __Pennsylvania__ ("Customer"), but without in any way binding you to do so, the undersigned, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, does hereby guarantee to you, your successors and assigns, the due regular and punctual payment of any sum or sums of money which the Customer may owe to you now or at any time hereafter, whether evidenced by an Account Document, on open account or otherwise, and whether it represents principal, interest, rent, late charges, indemnities, an original balance, an accelerated balance, liquidated damages, a balance reduced by partial payment, a deficiency after sale or other disposition of any leased equipment, collateral or security, or any other type of sum of any kind whatsoever that the Customer may owe to you now or at any time hereafter, and does hereby further guarantee to you, your successors and assigns, the due, regular and punctual performance of any other duty or obligation of any kind or character whatsoever that the Customer may owe to you now or at any time hereafter (all such payment and performance obligations being collectively referred to as "Obligations"). Undersigned does hereby further guarantee to pay upon demand all losses, costs, attorneys' fees and expenses which may be suffered by you by reason of Customer's default or default of the undersigned.

    This Guaranty is a guaranty of prompt payment and performance (and not merely a guaranty of collection). Nothing herein shall require you to first seek or exhaust any remedy against the Customer, its successors and assigns, or any other person obligated with respect to the Obligations, or to first foreclose, exhaust or otherwise proceed against any leased equipment, collateral or security which may be given in connection with the Obligations. It is agreed that you may, upon any breach or default of the Customer, or at any time thereafter, make demand upon the undersigned and receive payment and performance of the Obligations, with or without notice or demand for payment or performance by the Customer, its successors or assigns, or any other person. Suit may be brought and maintained against the undersigned, at your election, without joinder of the Customer or any other person as parties thereto. The obligations of each signatory to this Guaranty shall be joint and several.

    The undersigned agrees that its obligations under this Guaranty shall be primary, absolute, continuing and unconditional, irrespective of and unaffected by any of the following actions or circumstances (regardless of any notice to or consent of the undersigned): (a) the genuineness, validity, regularity and enforceability of the Account Documents or any other document; (b) any extension, renewal, amendment, change, waiver or other modification of the Account Documents or any other document; (c) the absence of, or delay in, any action to enforce the Account Documents, this Guaranty or any other document; (d) your failure or delay in obtaining any other guaranty of the Obligations (including, without limitation, your failure to obtain the signature of any other guarantor hereunder); (e) the release of, extension of time for payment or performance by, or any other indulgence granted to the Customer or any other person with respect to the Obligations by operation of law or otherwise; (f) the existence, value, condition, loss, subordination or release (with or without substitution) of, or failure to have title to or perfect and maintain a security interest in, or the time, place and manner of any sale or other disposition of any leased equipment, collateral or security given in connection with the Obligations, or any other impairment (whether intentional or negligent, by operation of law or otherwise) of the rights of the undersigned; (g) the Customer's voluntary or involuntary bankruptcy, assignment for the benefit of creditors, reorganization, or similar proceedings affecting the Customer or any of its assets; or (h) any other action or circumstances which might otherwise constitute a legal or equitable discharge or defense of a surety or guarantor.

    This Guaranty may be terminated upon delivery to you (at your address shown above) of a written termination notice from the undersigned. However, as to all Obligations (whether matured, unmatured, absolute, contingent or otherwise) incurred by the Customer prior to your receipt of such written termination notice (and regardless of any subsequent amendment, extension or other modification which may be made with respect to such Obligations), this Guaranty shall nevertheless continue and remain undischarged until all such Obligations are indefeasibly paid and performed in full.

The undersigned agrees that this Guaranty shall remain in full force and effect or be reinstated (as the case may be) if at any time payment or performance of any of the Obligations (or any part thereof) is rescinded, reduced or must otherwise be restored or returned by you, all as though such payment or performance had not been made. If, by reason of any bankruptcy, insolvency or similar laws effecting the rights of creditors, you shall be prohibited from exercising any of your rights or remedies against the Customer or any other person or against any property, then, as between you and the undersigned, such prohibition shall be of no force and effect, and you shall have the right to make demand upon, and receive payment from, the undersigned of all amounts and other sums that would be due to you upon a default with respect to the Obligations.

Notice of acceptance of this Guaranty and of any default by the Customer or any other person is hereby waived. Presentment, protest demand, and notice of protest, demand and dishonor of any of the Obligations, and the exercise of possessory, collection or other remedies for the Obligations, are hereby waived. The undersigned warrants that it has adequate means to obtain form the Customer on a continuing basis financial data and other information regarding the Customer and is not relying upon you to provide any such data or other information. Without limiting the foregoing, notice of adverse change in the Customer's financial condition or of any other fact which might materially increase the risk of the undersigned is also waived. All settlements, compromises, accounts stated and agreed balances made in good faith between the Customer, its successors or assigns, and you shall be binding upon and shall not affect the liability of the undersigned.

Payment of all amounts now or hereafter owed to the undersigned by the Customer or any other obligor for any of the Obligations is hereby subordinated in right of payment to the indefeasible payment in full to you of all Obligations and is hereby assigned to you as a security therefor. The undersigned hereby irrevocably and unconditionally waives and relinquishes all statutory, contractual, common law, equitable and all other claims against the Customer, any other obligor for any of the Obligations, any collateral therefor, or any other assets of the Customer or any such other obligor, for subrogation, reimbursement, exoneration, contribution, indemnification, setoff or other recourse in respect of sums paid or payable to you by the undersigned hereunder, and the undersigned hereby further irrevocably and unconditionally waives and relinquishes any and all other benefits which it might otherwise directly or indirectly receive or be entitled to receive by reason of any amounts paid by, or collected or due from, it, the Customer or any other obligor for any of the Obligations, or realized from any of their respective assets.

THE UNDERSIGNED HEREBY UNCONDITIONALLY WAIVES ITS RIGHT TO A JURY TRAIL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS BETWEEN US RELATING TO THE SUBJECT MATTER HEREOF OR THEREOF, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN US. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY OF CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). THIS WAIVER IS IRREVOCABLE MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, OR ANY RELATED DOCUMENTS. IN THE EVENT OF LITIGATION, THIS GUARANTY MAY BE FILED AS A WRITTEN CONSENT TO A TRAIL BY THE COURT.

As used in this Guaranty, the word "person" shall include any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization, or any government or any political subdivision thereof.

This Guaranty is intended by the parties as a final expression of the guaranty of the undersigned and is also intended as a complete and exclusive statement of the terms thereof. No course of dealing, course of performance or trade usage, not any paid evidence of any kind, shall be used to supplement or modify any of the terms thereof. Nor are there any conditions to the full effectiveness of this Guaranty. This Guaranty and each of its provisions may only be waived, modified, varied, released, terminated or surrendered, in whole or in part, by a duly authorized written instrument signed by you. No failure by you to exercise your rights hereunder shall give rise to any estoppel against you, or excuse the undersigned from performing hereunder. Your waiver of any tight to demand performance hereunder shall not be a waiver of any subsequent or other right to demand performance hereunder.

This Guaranty shall bind the undersigned's successors and assigns and the benefits thereof shall extend to and include your successors and assigns. In the event of default hereunder, you may at any time inspect undersigned's records, or at your option, undersigned shall furnish you with a current independent audit report.

If any provisions of this Guaranty are in conflict with any applicable statute, rule or law, then such provisions shall be deemed null and void to the extent that they may conflict therewith, but without invalidating any other provisions hereof.

Each signatory on behalf of a corporate guarantor warrants that he had authority to sign on behalf of such corporation and by so signing, to bind said guarantor corporation hereunder.

IN WITNESS WHEREOF, this Guaranty is executed the day and year above written.

R & S TRANSPORTATION SERVICES, INC.

By:_____Robert J. Rhodes_____

Its:_____President_____

ATTEST:_____
Secretary/Assistant Secretary

## INDIVIDUAL GUARANTY

Date: _X 03/22/00_

ABC Bus Leasing, Inc.
25 4th Street N.W.
Faribault, MN 55021

To induce you to enter into, purchase or otherwise acquire, now or at any time hereafter, any promissory notes, security agreements, chattel mortgages, pledge agreements, conditional sale contracts, lease agreements, and/or any other documents or instruments evidencing, or relating to, any lease, loan, extension of credit or other financial accommodation (collectively "Account Documents" and each an "Account Document") to_ R.J. Rhodes Transit, Inc. _, a Corporation, organized and existing under the laws of the State of _ Pennsylvania _ ("Customer"), but without in any way binding you to do so, the undersigned, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, does hereby guarantee to you, your successors and assigns, the due regular and punctual payment of any sum or sums of money which the Customer may owe to you now or at any time hereafter, whether evidenced by an Account Document, on open account or otherwise, and whether it represents principal, interest, rent, late charges, indemnities, an original balance, an accelerated balance, liquidated damages, a balance reduced by partial payment, a deficiency after sale or other disposition of any leased equipment, collateral or security, or any other type of sum of any kind whatsoever that the Customer may owe to you now or at any time hereafter, and does hereby further guarantee to you, your successors and assigns, the due, regular and punctual performance of any other duty or obligation of any kind or character whatsoever that the Customer may owe to you or at any time hereafter (all such payment and performance obligations being collectively referred to as "Obligations"). Undersigned does hereby further guarantee to pay upon demand all losses, costs, attorneys' fees and expenses which may be suffered by you by reason of Customer's default or default of the undersigned.

This Guaranty is a guaranty of prompt payment and performance (and not merely a guaranty of collection). Nothing herein shall require you to first seek or exhaust any remedy against the Customer, its successors and assigns, or any other person obligated with respect to the Obligations, or to first foreclose, exhaust or otherwise proceed against any leased equipment, collateral or security which may be given in connection with the Obligations. It is agreed that you may, upon any breach or default of the Customer, or at any time thereafter, make demand upon the undersigned and receive payment and performance of the Obligations, with or without notice or demand for payment or performance by the Customer, its successors or assigns, or any other person. Suit may be brought and maintained against the undersigned, at your election, without joinder of the Customer or any other person as parties thereto. The obligations of each signatory to this Guaranty shall be joint and several.

The undersigned agrees that its obligations under this Guaranty shall be primary, absolute, continuing and unconditional, irrespective of and unaffected by any of the following actions or circumstances (regardless of any notice to or consent of the undersigned): (a) the genuineness, validity, regularity, and enforceability of the Account Documents or any other document; (b) any extension, renewal, amendment, change, waiver or other modification of the Account Documents or any other document; (c) the absence of, or delay in, any action to enforce the Account Documents, this Guaranty or any other document; (d) your failure or delay in obtaining any other guaranty of the Obligations (including, without limitation, your failure to obtain the signature of any other guarantor hereunder); (e) the release of, extension of time for payment or performance by, or any other indulgence granted to the Customer or any other person with respect to the Obligations by operation of law or otherwise; (f) the existence, value, condition, loss, subordination or release (with or without substitution) of, or failure to have title to or perfect and maintain a security interest in, or the time, place and manner of any sale or other disposition of any leased equipment, collateral or security given in connection with the Obligations, or any other

impairment (whether intentional or negligent, by operation of law or otherwise) of the rights of the undersigned; (g) the Customer's voluntary or involuntary bankruptcy, assignment for the benefit of creditors, reorganization, or similar proceedings affecting the Customer or any of its assets; or (h) any other action or circumstances which might otherwise constitute a legal or equitable discharge or defense of a surety or guarantor.

This Guaranty may be terminated upon delivery to you (at your address shown above) of a written termination notice from the undersigned. However, as to all Obligations (whether matured, unmatured, absolute, contingent or otherwise) incurred by the Customer prior to your receipt of such written termination notice (and regardless of any subsequent amendment, extension or other modification which may be made with respect to such Obligations), this Guaranty shall nevertheless continue and remain undischarged until all such Obligations are indefeasibly paid and performed in full.

The undersigned agrees that this Guaranty shall remain in full force and effect or be reinstated (as the case may be) if at any time payment or performance of any of the Obligations (or any part thereof) is rescinded, reduced or must otherwise be restored or returned by you, all as though such payment or performance had not been made. If, by reason of any bankruptcy, insolvency or similar laws affecting the rights of creditors, you shall be prohibited from exercising any of your rights or remedies against the Customer or any other person or against any property, then, as between you and the undersigned, such prohibition shall be of no force and effect, and you shall have the right to make demand upon, and receive payment from, the undersigned of all amounts and other sums that would be due to you upon a default with respect to the Obligations.

Notice of acceptance of this Guaranty and of any default by the Customer or any other person is hereby waived. Presentment, protest demand, and notice of protest, demand and dishonor of any of the Obligations, and the exercise of possessory, collection or other remedies for the Obligations, are hereby waived. The undersigned warrants that it has adequate means to obtain from the Customer on a continuing basis financial data and other information regarding the Customer and is not relying upon you to provide any such data or other information. Without limiting the foregoing, notice of adverse change in the Customer's financial condition or of any other fact which might materially increase the risk of the undersigned is also waived. All settlements, compromises, accounts stated and agreed balances made in good faith between the Customer, its successors or assigns, and you shall be binding upon and shall not affect the liability of the undersigned.

Payment of all amounts now or hereafter owed to the undersigned by the Customer or any other obligor for any of the Obligations is hereby subordinated in right of payment to the indefeasible payment in full to you of all Obligations and is hereby assigned to you as a security therefor. The undersigned hereby irrevocably and unconditionally waives and relinquishes all statutory, contractual, common law, equitable and all other claims against the Customer, any other obligor for any of the Obligations, any collateral therefor, or any other assets of the Customer or any such other obligor, for subrogation, reimbursement, exoneration, contribution, indemnification, setoff or other recourse in respect of sums paid or payable to you by the undersigned hereunder, and the undersigned hereby further irrevocably and unconditionally waives and relinquishes any and all other benefits which it might otherwise directly or indirectly receive or be entitled to receive by reason of any amounts paid by, or collected or due from, it, the Customer or any other obligor for any of the Obligations, or realized from any of their respective assets.

THE UNDERSIGNED HEREBY UNCONDITIONALLY WAIVES ITS RIGHT TO A JURY TRAIL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS BETWEEN US RELATING TO THE SUBJECT MATTER HEREOF OR THEREOF, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN US. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND

STATUTORY CLAIMS). THIS WAIVER IS IRREVOCABLE MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, OR ANY RELATED DOCUMENTS. IN THE EVENT OF LITIGATION, THIS GUARANTY MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

As used in this Guaranty, the word "person" shall include any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization, or any government or any political subdivision thereof.

This Guaranty is intended by the parties as a final expression of the guaranty of the undersigned and is also intended as a complete and exclusive statement of the terms thereof. No course of dealing, course of performance or trade usage, nor any paid evidence of any kind, shall be used to supplement or modify any of the terms hereof. Nor are there any conditions to the full effectiveness of this Guaranty. This Guaranty and each of its provisions may only be waived, modified, varied, released, terminated or surrendered, in whole or in part, by a duly authorized written instrument signed by you. No failure by you to exercise your rights hereunder shall give rise to any estoppel against you, or excuse the undersigned from performing hereunder. Your waiver of any right to demand performance hereunder shall not be a waiver of any subsequent or other right to demand performance hereunder.

This Guaranty shall not be discharged or affected by the death of any of the undersigned, but shall bind their respective heirs, executors, administrators, and assigns, and the benefits thereof shall extend to and include your successors and assigns. In the event of default hereunder, you may at any time inspect undersigned's records, or at your option, undersigned shall furnish you with a current independent audit report.

If any provisions of this Guaranty are in conflict with any applicable statute, rule or law, then such provisions shall be deemed null and void to the extent that they may conflict therewith, but without invalidating any other provisions hereof.

THIS GUARANTY IS BEING EXECUTED BY THE UNDERSIGNED INDIVIDUALS IN THEIR OWN CAPACITY AND NOT AS A DIRECTOR, OFFICER, EMPLOYEE, OR REPRESENTATIVE FOR ANY CORPORATION OR OTHER ORGANIZATION.

WITNESS our hands on the day and year above written.

Signed in the presence of:

X _Carol Trojan_____
Notary Signature

Date: _March 22, 2000_____

Notary Seal

By: _Robert J. Rhodes_____

Print Name:   Robert J. Rhodes

Address:   _2990 Duss Ave_____
            _Ambridge   PA  15003_

Telephone No.: _724 266 4322_

Social Security No.: ___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____

(Sign and print your name only.)
(DO NOT add any title or corporate office.)

Notarial Seal
Carol Trojan, Notary Public
Economy Boro, Beaver County
My Commission Expires Nov. 13, 2000
Member Pennsylvania Association of Notaries

# MASTER ASSIGNMENT AGREEMENT

THIS MASTER ASSIGNMENT AGREEMENT ("Agreement") is made as of the 8th day of November, 1999 by and between ABC Bus Leasing, Inc. ("Assignor") and US Bancorp Leasing & Financial ("Assignee").

A.     From time to time Assignor will enter into master lease agreements of various dates with various lessees pursuant to which Assignor shall lease motor coach vehicles to the lessees pursuant to the master lease agreements.  The master lease agreements shall contemplate the execution of equipment schedules (referred to herein as "schedules") incorporating by reference the terms of the master lease agreement and specifying the lease terms and rentals with respect to the described vehicle or vehicles.

B.     Pursuant to the terms of this Agreement, from time to time Assignor will to assign to Assignee, and Assignee will accept assignment of, all rights and obligations of Assignor under a master lease agreement insofar as they relate to a specified schedule or schedules, on the terms and subject to the conditions set forth in this Agreement (such master lease agreements, insofar as they relate to the schedules, being referred to herein as the "leases," and each individually a "lease").  In connection with such assignments of leases, Assignor will also sell and transfer to Assignee, pursuant to the terms of this Agreement, all of Assignor's right, title and interest in the vehicles and any other property leased under the leases (such vehicles and other property being referred to herein as the "vehicles," and each individually as a "vehicle").  Any such leases which Assignor desires to assign to Assignee and Assignee desires to accept assignment from Assignor shall be identified on specifications to this Agreement between Assignor and Assignee, in the form attached as Exhibit A hereto (collectively "Specifications," and each individually a "Specification").

C.     Notwithstanding the above assignment, Assignor and Assignee desire that the leases be serviced by Assignor in accordance with the terms of this Agreement.

NOW, THEREFORE, in consideration of the sum of Ten Dollars ($10.00) in hand paid, the mutual promises made herein, and such other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

1.  Conveyance.

(a.) Conveyance. In exchange for Assignee's full and final payment to Assignor of the Consideration (as defined in part (b) of this Section), and all of Assignee's other agreements hereunder, Assignor hereby sells, assigns, transfers and sets over to Assignee, without recourse except as provided herein, and Assignee agrees fully to accept and assume:

i.     All of Assignor's right, title and interest in, to and under: (A) the master lease agreements specified in the Specifications hereto insofar as they relate to the schedules specified in the Specifications; (B) the schedules to the master lease agreements specified in the Specifications hereto, including, without limitation, all payments due and to become due thereunder on or after the date hereof; (C) all monies due or to become due in connection with the exercise by the lessees of options to purchase the vehicles: (D) all monies, including insurance proceeds, payable upon the theft, loss, damage, destruction or condemnation of the vehicles; (E) any security deposits paid to Assignor in connection with the leases; (F) all manufacturers' and/or vendors' warranties with respect to the vehicles to the extent assignable; and (G) all monies payable or recoverable following a default by the lessees under the leases;

ii.     All of Assignor's right, title and interest in and to the vehicles including, without limitation, the residual value at the termination of each lease, and any guaranties of the leases, and all of Assignor's rights and remedies under the leases and under any such guaranties, including the right to take, in Assignor's name (with Assignor's written consent which shall not be unreasonably withheld) or Assignee's name, any and all proceedings, legal, equitable or otherwise, that Assignor might otherwise take, save for this Agreement;

iii.     Any security interest in the vehicles granted by the lessees under the leases (i, ii, and iii above are hereinafter referred to collectively as the "Assigned Interest"); and

iv.     Except as set forth in Section 2 of this Agreement, all of Assignor's obligations under the leases to the extent arising on or after the effective date (as defined below).

Assignor waives and releases any right, title or interest that it may have (whether pursuant to a "cross-collateralization" provision or otherwise) in and to any of the Assigned Interest. Each Specification shall apply only to schedule(s) and vehicle(s) described therein and shall incorporate the terms of this Agreement, with any such variations and additional terms and conditions as the parties may agree upon and specify in such Specification, and each shall constitute a separate agreement between Assignor and Assignee. In the case of any conflict between the provisions of this Agreement and any Specification, the provisions of such Specification shall control. Assignor is not assigning to Assignee and Assignee is not assuming Assignor's obligations under any lease, which, by their terms, are required to be performed on or before the effective date of the assignment of such lease (as defined below) and Assignor shall remain responsible for the performance of, and agrees to duly perform, such obligations.

(b.) Consideration. In exchange for each conveyance by Assignor pursuant hereto and as evidenced by a Specification, Assignee shall pay to Assignor, in cash, the full amount of the Consideration specified on each such Specification (the "Consideration"), and both parties agree that none of the right, title or interest so conveyed by such Specification shall pass to Assignee unless and until Assignor has received the full and final payment of the Consideration therefor;

2

(c.) Rates. Rates shall be determined by the parties on a case by case basis;

(d.) Lease transactions. Assignor shall cause a prospective customer to complete an Offer Document Package, and Assignor will forward such package to Assignee. Upon receipt thereof, Assignee shall review and either approve or reject the Offer Document Package and shall notify the Assignor in writing of its determination, and will endeavor to so notify the Assignor within 3 business days after Assignee's receipt of an Offer Document Package. Assignee shall have the right to approve or disapprove customers and proposed transactions in its sole discretion pursuant to its independently determined internal credit and investment standards. Upon notification, Assignor shall (a) advise the customer of the approval of a proposed transaction or (b) provide the customer with any notice required by the federal Equal Credit Opportunity Act. If customer elects to proceed with an approved transaction, Assignor shall endeavor to notify Assignee no more than two (2) weeks nor less than three (3) business days prior to delivery of the vehicle(s). Assignor will obtain the execution of transaction documentation by the customer. By the delivery date, Assignor must deliver to Assignee a Final Documentation Package executed and delivered by customer. All such documentation shall be prepared and negotiated solely by Assignor. For purposes herein, "Offer Documentation Package" shall mean an application (including credit information concerning the Assignor) and related documents from time to time required by Assignee in accordance with its standard procedures for the program to initiate its consideration of a proposed transaction, and "Final Documentation Package" shall mean such properly executed documents (including but not limited to customer certificates of acceptance and executed lease documentation) as Assignee shall from time to time require in accordance with its standard procedures for the program in order to complete transactions and to pay the invoiced purchase price of vehicles, including, but not limited to, the documentation set forth on <u>Exhibit B</u> hereto. Assignor shall make copies of all documents included in the Final Documentation Package prior to delivery to Assignee to enable Assignor to comply with its servicing obligations under Section 2 of this Agreement. All lease documentation shall be on the forms attached hereto as <u>Exhibit C</u>. Assignor shall clearly identify any changes to such forms (whether initiated by Assignor or negotiated with the lessee) and request Assignee's approval of such changes before funding of any transaction. Unless otherwise agreed to by the parties in writing, the maximum term (including renewal options) of any lease assigned to Assignee pursuant to this Agreement shall be one hundred twenty (120) months.

(e).   As between Assignor and Assignee, the effective date ("the effective date") with respect to the assignment of any lease from Assignor to Assignee shall be the date Assignee pays to Assignor the Consideration; <u>provided</u> that the following conditions precedent have been satisfied on or before the effective date:

i.   The Specification identifying the assigned lease shall be duly executed and delivered by Assignor and Assignee;

ii   The Final Documentation Package shall have been duly executed and delivered by all parties, and delivered by Assignor to Assignee;

iii.     An undated Notice and Acknowledgement of Assignment in the form attached hereto as **Exhibit D** (referred to herein as "notice of assignment"), with respect to the assigned lease shall have been duly executed by Assignor and delivered to Assignee and shall be in full force and effect as of the effective date, and Assignee is hereby authorized to date and deliver to the lessee such notice of assignment upon termination of Assignor's servicing obligations under this Agreement with respect to the lease.

2.   General Administrative Services.

(a.) Assignor will provide general administrative services in connection with the underlying lease transactions on behalf of Assignee. Assignor and Assignee will establish procedures to be followed from time to time in connection with such services in order to insure the proper administration of the transactions and orderly application of payments in accordance with Assignee's policies and procedures. Such services will include, but not be limited to:

i.     responding to customer inquiries;

ii.     billing, collecting and posting of payments related to and arising from the leases, including sales, use and property taxes (it being understood however that Assignee will report and remit taxes to the applicable taxing authority and provide evidence thereof to Assignor);

iii.     investigate and collect delinquencies;

iv.     prepare and provide to Assignee collection, payment, delinquency and other reports on collection and remittance activities in form and with such frequency as Assignee requests from time to time, and unless otherwise specified by Assignee, on a monthly basis;

v.     promptly forward to Assignee any notices or other communications received from customers or related obligors which could affect assignee's rights, remedies, or obligations under the transaction documents;

vi.     Notify Assignee of any accidents involving a vehicle promptly after Assignor has received notice thereof; and

vii.     Provide a competent witness and make any pertinent documentary evidence available in any lawsuit, arbitration proceeding, or other legal proceeding involving the vehicles financed by the transaction documents, at Assignee's expense.

Assignor shall have no authority however, to:

i.     amend any lease, or renew or extend the time for payment or performance or grant any other indulgence to any Customer, or restructure,

4

defer, adjust, forbear, discharge or otherwise alter payment or other account terms, by operation of law or otherwise;

ii.  make any settlements, compromises, discharges, or releases;

iii.  negotiate any early termination, prepayment, end of term provision or any other termination, purchase, renewal or other similar provision;

iv.  demand additional collateral;

v.  release any lien or collateral, or agree to substitution or replacement of collateral;

vi.  settle any insurance or other claims;

vii.  issue demand letters or default notices, initiate any legal action or proceeding in the name of Assignee or otherwise, or administer lawsuits and other collection proceedings (it being understood that Assignor will cooperate with Assignee's collection efforts);

viii.  transfer or assign or consent to the transfer or assignment of any rights or obligations in regard of any lease or any vehicle; or

ix.  track insurance to be maintained by customers under the leases,

it being understood that any such matters shall be referred to Assignee and shall be handled and determined by Assignee in the sole exercise of its business judgment.

(b.) In order to enable Assignor to provide such services, Assignee will endeavor to provide Assignor with a copy of any documents reasonably requested by Assignor which are in Assignee's possession.

(c.) Assignee constitutes and appoints Assignor its true and lawful agent with full power and authority to the extent provided in this Agreement and as necessary and appropriate to perform the services provided herein, including without limitation, the right to endorse or sign Assignee's name on all checks, collections, receipts or other documents to protect Assignee's right, title and interest in and to the vehicles, the leases and the security intended to be afforded thereby and hereby;

(d.) In providing such services, Assignor shall use commercially reasonable and prudent efforts, consistent with the same standard of skill and care Assignor exercises with respect to servicing its own assets and without discrimination in favor of Assignor's own assets or assets it services for the account of others. Without limitation of the foregoing, Assignor shall follow its customary standards, policies and procedures in performing its duties hereunder. All services will be provided in accordance with applicable laws and the applicable lease documents;

(e.) All monies collected by Assignor shall be remitted to Assignee twice a month, on the fifteen (15th) (or next succeeding business day if such day is not a business day), and the second to last business day of each calendar month, by wire transfer of immediately available funds to the bank account specified from time to time by Assignee by written notice to Assignor, with telephone confirmation and a federal funds wire transfer identification number. Without limitation of any of its other rights or remedies, Assignee may require Assignor to pay Assignee a late charge equal to five percent (5%) of the amount of any payments not remitted to Assignee when due under this Section. Assignor shall also deliver to Assignee with each remittance an accounting of the amounts collected, amounts outstanding and other relevant information required by Assignee on a transaction by transaction basis in order for Assignee to reconcile account information, in format acceptable to Assignee. Assignee shall have the right, at any time during the term hereof, during normal business hours, to inspect and audit Assignor's business records related to its duties hereunder provided that Assignee will use its reasonable best efforts not to unreasonably interfere with Assignor's other business activities; All payments received by Assignor in connection with the transactions financed by Assignee shall be held by Assignor in trust for the benefit of Assignee (but may be commingled with funds collected by Assignor for transactions it services for its own account or for the account of others) pending remittance to Assignee. Assignor's obligation to hold, remit and deposit such payments held for the benefit of Assignee shall be absolute and unconditional and free from any right of setoff or deduction whatsoever, Assignor hereby waiving the same.

(f.) Once any lease is in default for failure to have insurance in compliance with the terms of the lease documentation or is sixty (60) days past due on payments, or if the lessee is in default of any other obligation under the lease documents which has not been remedied within any applicable cure period provided therein, Assignee may at its option, assume servicing responsibility for such affected transactions and send a notice of assignment to the affected lessees, subject to continuation of the services provided by Assignor on an interim basis as requested by Assignee on a deal by deal basis, and in that event, Assignor's obligations under this section with respect to such affected transactions shall end and Assignor will promptly remit to Assignee upon receipt any monies thereafter received by Assignor related to such transactions;

(g.) Assignor will not be paid a fee for providing the administrative services provided pursuant to this Section. Assignor shall be entitled to reimbursement for reasonable out of pocket expenses incurred in connection with providing such services upon presentation of itemized invoices therefor and provided further that Assignor will obtain Assignee's prior written authorization before incurring any expenses on Assignee's behalf for which Assignor may seek reimbursement from Assignee. Nothing contained herein shall preclude Assignor from obtaining legal counsel for its own behalf at its own expense;

(h.) In the event that there shall exist a default under this Agreement, or this Agreement shall be terminated, Assignee, in addition to any of its other rights or remedies, may, in its sole discretion, immediately terminate Assignor's servicing

obligations and proceed to administer and collect all transactions in its own name and to notify customers thereof. Assignor agrees to sign any joint notice to this effect that Assignee may reasonably request and will promptly remit to Assignee upon receipt any monies thereafter received by Assignor related to any of the transactions.

3.  Assignor's Representations and Warranties.  With respect to each lease assigned by Assignor to Assignee pursuant to this Agreement, Assignor hereby covenants, represents and warrants to Assignee: (i) as of the date of execution of such lease and as of the effective date of the assignment of such lease to Assignee with respect to the matters referred to in Section 3(a) below; and (ii) as of the date of this Agreement, as of the date of execution of such lease and as of the effective date of the assignment of such lease to Assignee with respect to the matters referred to in Section 3(b) below, that:

(a.) all agreements and/or instruments relating to the transactions contemplated by or executed in connection with the lease documents to which Assignor is a party or beneficiary are genuine and that, to the best of Assignor's knowledge after due inquiry, all the information contained in the lease documents is accurate in all material aspects; the lease documents and the amounts owing thereunder are true, accurate and correct in all material respects; that the lessee has not been granted a right to prepay any amounts under the lease documents and no prepayments have been made by the lessee, except as expressly set forth in the lease documents; the lease documents are in all respects what they purport to be and are enforceable, valid and binding in accordance with their terms (except as may be limited by applicable principles of law affecting creditor's rights generally); Assignor had full right to enter into or accept the lease documents; Assignor has no knowledge of any fact, which would impair the value or validity of any lease documents, the rights created thereby, the vehicle(s) leased thereunder, or this Agreement; the lease documents arise out of bona fide commercial leases to the lessee in the ordinary course of Assignor's business; the lease documents and the amounts owing thereunder have not been restructured, modified, extended or altered except as has been disclosed in writing to Assignee; to the best of Assignor's knowledge after due inquiry, the vehicle is substantially in conformance with all contractual representations and warranties made to lessee with respect thereto; the lessee has paid the down payments or advance rentals in cash or as otherwise set forth in the lease; Assignor has the original certificate of title for each such titled item, or a copy thereof, in a form acceptable to the Assignee; to the best of Assignor's knowledge after due inquiry, the lessee does not have a right to setoff, counterclaims, or reduction in the amounts due or any other defense under the lease documents; to the best of Assignor's knowledge after due inquiry, the lessee has not instituted any litigation or proceeding with respect to any lease; such lease documents represent the entire agreement of the parties thereto with respect to the leasing of the vehicle(s) and there have been no amendments, modifications, waivers, or releases of any of the provisions thereof except as delivered to Assignee; Assignor has good and marketable title to and ownership of the lease documents and vehicle(s) leased thereunder, free and clear from all liens and encumbrances (or with respect to such vehicle(s), a valid, perfected first priority security interest therein); the lease documents are assignable to Assignee (its successors and assigns), individually or collectively, without the prior written consent of, or prior notice to, any person including the lessee;

neither Assignor nor any of its agents, has participated in any fraudulent act or omission in connection with any lease documents; Assignor has obtained and possesses all licenses and permits required by law to carry on its business (except where the failure would not materially affect the transactions hereby, and which could not be readily obtained or cured); the lease documents state that the lessee will only use the vehicle(s) for business or commercial use; all original counterparts of the schedule and a certified copy of the master lease agreement and any related documents, each as now in effect, have been or contemporaneously with the assignment thereof to Assignee are being delivered by Assignor to Assignee; lessee is not in default with respect to any monetary obligation under the lease, and, to the best of Assignor's knowledge, the lessee is not in default with respect to any non-monetary obligation under the lease, including any event which with the passing of time or the giving of notice would constitute, such an event of default thereunder; all duties of Assignor required by the lease or have been fulfilled and Assignor is not in default with respect to any of its obligations under the lease, nor has any event occurred and continued which with the passing of time or the giving of notice would constitute such a default by Assignor; Assignor has fully complied with all applicable federal and state laws, rules and regulations and has made all disclosures required by law in connection with the transactions contemplated by the lease, prior to the consummation of the lease; the purchase price for the vehicle(s) has been paid in full, and all taxes required to be paid in connection with the acquisition of the vehicle(s) have been paid in full; all taxes due and payable as of the date hereof with respect to the Assigned Interest, the lease and the vehicle(s) have been paid in full; each schedule assigned to Assignee constitutes a separate obligation of the lessee, enforceable by Assignee without regard to other schedules executed pursuant to the lease which have not been assigned to Assignee; and the aggregate unpaid rentals under the lease as shown on the schedule is correct in accordance with the terms of the lease.

(b.) the execution, delivery and performance of this Agreement have been duly authorized by all necessary corporate action and is binding on Assignor enforceable in accordance with its terms; the execution, delivery and performance of this Agreement will not (a) constitute a violation or default of any agreement, indenture, article of incorporation, by-law or other charter document of Assignor or of any law, statute, rule, judgment or decree of any court, agency or governmental body to which Assignor is subject (b) require the approval, consent of, or filing or registration with any governmental body or regulatory agency or authority (except where the failure would not materially affect the transactions hereby, and which could not be readily obtained or cured); there are no actions, suits, claims, proceeding or disputes pending or threatened against Assignor and Assignor is not in default under any contractual obligation which could have a material adverse affect on Assignor's business or its ability to perform hereunder; Assignor has not sold, assigned or pledged the lease documents or any of its rights therein or the vehicle(s) or any of its rights therein to any party other than Assignee; and Assignor has the right to assign the lease documents and conveys good title to the lease documents and all of Assignor's interest in the vehicle(s) is free and clear of any other liens and encumbrances by or through Assignor.

Assignor further covenants represents and warrants that, as of the effective date of the assignment of the lease to Assignee, Assignor has delivered all documents and

8

instruments in connection with the assignment of the Assigned Interest to Assignee which are required under the terms of this Agreement.

4. Assignee Representations & Warranties.

(a.) The execution of this Agreement and each Specification on its behalf and its participation in the transactions specified therein is in its ordinary course of business and within the scope of its existing corporate authority;

(b.) There is no action, suit or proceeding pending against Assignee before or by any court, administrative agency or other governmental authority which brings into question the validity of, or might in any way impair, the execution, delivery or performance by Assignee of this Agreement or the Specifications;

(c.) No approval of, or consent from, any governmental authority is required for the execution, delivery or performance by Assignee of this Agreement or the Specifications;

(d.) The execution, delivery and performance by Assignee of this Agreement and the Specifications and the performance by Assignee herein and the transactions contemplated hereby and thereby do not contravene any provisions of law applicable to Assignee and do not conflict and are not inconsistent with, and will not result (with or without giving of notice or passage of time or both) in the breach of or constitute a default or require any consent under any agreement, indenture or other instrument to which Assignee is a party, by which Assignee may be bound, to which Assignee or its property may be subject, or Assignee's Charter or By-Laws;

(e.) This Agreement and each Specification constitute the legal, valid and binding obligation of Assignee, enforceable against Assignee in accordance with their terms, except as limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally, and by applicable laws (including any applicable common law and equity) and judicial decisions which may affect the remedies provided herein;

(f.) Other than Section 3 herein, Assignee acknowledges that Assignor makes no representations or warranties concerning the accuracy, adequacy or completeness of any information provided by Assignor to Assignee concerning the financial condition or creditworthiness of the lessee. Assignee has made its own independent investigation and analysis as to the financial condition and credit worthiness of lessee and is not relying on Assignor with regard to the financial condition or creditworthiness of the lessee. Assignee further acknowledges that Assignor has made no representation or warranty as to the availability of any tax benefits related to the lease documents or the tax consequences associated with the consummation of the transactions contemplated herein;

(g.) Assignee acknowledges this Assignment is without recourse except that if Assignor breaches any agreement, covenant, warranty or representation in this Agreement.

5. Lessee Default.

Except as specifically provided herein for a breach of any covenant, warranty or representation by Assignor, Assignee shall have no recourse to Assignor in the event of lessee's inability to pay any amounts pursuant to the lease documents.

6. Remarketing Assistance.

(a.) If requested by Assignee in writing, following the early termination, expiration or other cancellation of a lease transaction and when vehicles are made legally available, Assignor shall act as Assignee's remarketing agent and provide the Remarketing Services (as defined below) and such additional reasonable services as Assignee may request in connection with the sale and remarketing of vehicles related to an underlying lease transaction;

(b.) As used herein, the term "Remarketing Services" means and includes:

i.      Use of best efforts, to solicit firm cash offers for the sale of the vehicles on an AS IS, WHERE IS basis, without recourse or warranty to Assignee or Assignor of any kind whatsoever ("AS IS BASIS");

ii.     Providing Assignee with information concerning the fair market value of the vehicles;

iii.    Inspect each vehicle and issue a written report to Assignee describing any repairs necessary to put the vehicles into salable condition and the estimated cost of such repairs. If and to the extent requested in writing by Assignee, Assignor shall promptly perform such repairs at Assignee's expense. It is agreed and understood that Assignor shall have no authority to perform any repairs on any vehicle except and to the extent specifically authorized in writing by Assignee;

iv.     If storage of the vehicles is desired by Assignee, Assignor shall, at no expense to Assignee, store the vehicles on Assignor's premises (or at another site designated by Assignor), in a secure and commercially reasonable manner and shall make the vehicles available for inspection by any prospective buyer or Assignee during regular business hours. The vehicles will be kept free and clear of all liens, claims and encumbrances arising by, through or under Assignor or its designated storage delegates. During the remarketing period, risk of loss, damage or liability shall be borne by Assignee, unless such loss or damage is due to Assignor's breach of its duty of reasonable care as custodian of the vehicles.

(c.) All offers solicited by Assignor will be solicited for sales on an AS IS BASIS. Assignor will advise all prospective buyers that any offer and all terms thereof are subject to Assignee's approval and that Assignor has no authority (express or implied) to sell (or commit to sell) any vehicle. All offers obtained by Assignor will be submitted to Assignee, and Assignee may accept or reject any offer in its sole discretion. If Assignee rejects an

offer, Assignor will continue to solicit offers. All sale documentation shall be directly between the buyer and Assignee;

(d.) As compensation for providing any Remarketing Services requested by Assignee hereunder, Assignee will pay Assignor a remarketing fee with respect to each vehicle sold pursuant to this agreement to a third party other than the respective customer, Assignor or any of their respective subsidiaries or affiliates, found by Assignor, in an amount equal to four per cent (4%) of the Net Remarketing Proceeds received for the vehicle. It is agreed and understood that except for any costs which Assignee is required to reimburse Assignor for under the express terms of this Agreement, such remarketing fee shall be Assignor's sole and exclusive compensation for providing the Remarketing Services for the vehicles. For purposes of this agreement, the Assignor shall be deemed to have found a buyer only if: (i) Assignor notified Assignee in writing as to the name and address of the buyer and the details of that person's firm offer to buy certain vehicle(s), (ii) a sale is actually consummated by Assignee;

(e.) As used herein the term, Net Remarketing Proceeds shall mean the gross cash proceeds actually received by Assignee from the sale of Vehicles, less: (i) any applicable sales or other taxes and (ii) any expenses reimbursed or paid to Assignor by Assignee, but excluding the remarketing fee paid to Assignor pursuant to the preceding paragraph.

7. Indemnification.

Each of the parties ("Indemnitor") shall indemnify and hold harmless the other party and its respective parents, affiliates, subsidiaries, employees, officers, directors and agents (each an "Indemnitee"), from and against any and all losses, claims, liabilities, demands and expenses whatsoever, including without limitation reasonable attorney's fees and costs (collectively, "Costs"), and from and against any actions or legal proceedings of any kind arising out of or in connection with any breach by an indemnitor of its representations, warranties, covenants or obligations hereunder or with any act, failure to act, omission, representation, or misrepresentation by an indemnitor, its affiliates or subsidiaries in connection with a transaction (collectively "Claims"). The foregoing covenants or indemnity do not encompass any gross negligence or willful misconduct by an indemnitee. All indemnities and obligations under this section shall survive the expiration or termination of this Agreement and the expiration or termination of any lease transaction. Without limitation of the foregoing, the parties agree that Assignor's indemnification in favor of Assignee shall also include any and all Costs and Claims arising out of or in connection with any claim, action or proceeding by a customer or related obligor for breach of any obligation under a maintenance service agreement made or incurred by Assignor or its affiliates with respect to the vehicles.

8. Term and Termination.

This Agreement shall be effective upon execution by Assignee and Assignor and shall continue from such effective date unless and until terminated by either party at any time upon thirty (30) days prior written notice; provided that Assignee may terminate this Agreement immediately upon notice in the event of a failure by Assignor to remit any

11

payments related to or arising out of the leases as and when, due to Assignee in accordance with this Agreement or in the event of any material adverse change in the financial condition of Assignor (including but not limited to any bankruptcy or other insolvency proceeding, assignment for the benefit of creditors, or appointment of receiver with respect to Assignor). In the event of termination or expiration of this Agreement the rights and obligations of the parties with respect to approved transactions will continue to be governed hereby, except for servicing obligations by Assignor, which may be immediately terminated by either party in such event.

9. Dispute Resolution.

(a.) The parties hereby agree to attempt to resolve all disputes arising out of or in connection with this Agreement (including any question regarding its existence, validity or termination) promptly, equitably and in good faith manner, through discussions and negotiations between their respective representatives;

(b.) Without limiting the application of Section 9(a), at any time after thirty (30) days from the date that a party has delivered notice of any dispute to the other party, any party shall have the right to refer any such dispute to and have such dispute finally resolved by an arbitration under the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). Each arbitration shall be conducted in Minneapolis, Minnesota, unless the parties agree otherwise;

(c.) The award rendered in any arbitration commenced hereunder shall be final and binding upon the parties and judgment thereon may be entered in any Court having jurisdiction for its enforcement. In addition, the parties agree that neither party shall have any right to commence or maintain any suit or legal proceeding concerning a dispute hereunder until the dispute has been determined in accordance with the arbitration procedure provided for in this Section and then only to enforce or facilitate the execution of the award rendered in such arbitration. The parties agree that any judgment upon any arbitration award may be entered by any court having jurisdiction thereof. The parties expressly submit to the jurisdiction of any such court. The award rendered shall apportion the costs of the arbitration;

10. Confidentiality.

Each party agrees to maintain in confidence all confidential and proprietary information provided to it by the other party and not to disclose any such information to anyone except (i) to the receiving party's employees, agents, auditors, advisors and counsel, (ii) the receiving party's parent, subsidiaries and affiliates, and their respective employees, agents, auditors, advisors and counsel, (iii) to governmental regulatory agencies in connection with examinations of the receiving party's records, or (iv) pursuant to a subpoena, court order or otherwise as may be required by law, or in connection with any court or arbitration proceeding to which receiving party is a party to the extent such information is relevant to matters at issue in such proceeding and provided that receiving party makes reasonable efforts to cause such information to be disclosed in connection with such proceeding under seal or similar protective order. The obligations imposed by this Section of this Agreement shall not apply to any information that is rightfully received

from a third party with accompanying use or disclosure restrictions, is independently developed by employees of the receiving party's organization who have not had access to such confidential information, is or becomes publicly available through no wrongful act of receiving party, is already known to receiving party, or is approved for release in writing by an authorized representative of the disclosing party. Both parties shall have the right to equitable or injunctive relief to prevent the unauthorized use or disclosure of confidential or propriety information and to such damages occasioned thereby.

11. Miscellaneous. ·

(a.) Assignee and Assignor acknowledge that they are separate entities, each of which has entered into this Agreement for independent business reasons. It is expressly understood and agreed that at no time will this Agreement be deemed to create a partnership, joint venture, employment contract, or any other relationship other than as set forth herein;

(b.) The relationship set forth herein is nonexclusive. Customers are free to utilize any financing source of their own choosing. There shall be no restriction on Assignee's or Assignor's independent business judgment, including, but not limited to, decisions regarding selection of customers, pricing, marketing or credit decisions. Assignee and Assignor shall be free to enter into financial transactions or any other transaction directly with customers at any time). This Agreement shall apply only to transactions referred to Assignee as provided herein unless the parties agree otherwise;

(c.) The rights and obligations of either party hereunder may not be assigned without the prior written consent of the other party; except that the rights and obligations of any party may be assigned to an affiliate (being an entity controlling, controlled, or under common control with a party) without the prior written consent of a party but written notice of such an assignment will be given within five (5) days prior to such assignment; provided that: (i) no such assignment to an affiliate shall relieve the assignor of any obligations under this Agreement which are not fully performed by such affiliate; and (ii) the other party to the Agreement shall have the right to terminate this Agreement immediately upon written notice to the assignor and assignee.;

(d.) Notices to Assignor or Assignee under this Agreement shall be deemed to have been given if mailed, postage prepaid, by first class mail, recognized overnight deliver service or registered or certified mail, return receipt requested, to the other party at the address first stated above or such other address as such party may have provided by notice;

(e.) The laws of the State of Minnesota shall govern all questions or disputes, whether sounding in tort or contract, relating to the interpretation, performance, validity, enforcement or effect of this agreement, without regard to choice of law principles thereof;

(f.) If at any time any provision of this Agreement shall be held by any court of competent jurisdiction to be illegal, void or unenforceable, such provision shall be of no force and effect, but the illegality or unenforceability of such provision shall have no effect upon and shall not impair the enforceability of any other provision of this Agreement;

(g.) This Agreement constitutes the entire agreement between the parties concerning the subject matter hereof and incorporates all representations made in connection with negotiation of the same. The terms hereof may not be terminated, amended, supplemented or modified orally, but only by an instrument duly executed by each of the parties hereto. This Agreement and any amendments hereto shall be binding on and inure to the benefit of the parties hereto and their respective permitted successors and assigns;

(h.) In the event there is any conflict between this Agreement and any ancillary agreements with respect to any transaction or vehicles, the terms and conditions of this Agreement shall control;

(i.) Neither Assignor nor Assignee shall run any advertisement mentioning the other without the prior written consent of the other.

(j.) Assignor and Assignee each hereby agree to execute and deliver such other instruments, and take such other actions, as the other party may reasonably request in connection with the transactions contemplated by this Agreement, including the delivery of any notices or other documents or instruments to lessees, which may be required in connection with the assignment contemplated hereby.

(k.) Assignor and Assignee agree that the leases and this Agreement are not and shall not be construed to be, "securities" under federal or state securities laws. This Agreement constitutes a sale of one hundred percent ownership interest in the leases assigned hereunder, and shall in no way be construed as an extension of credit by the Assignee to the Assignor.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their respective duly authorized representatives on the date set forth below.

US BANCORP LEASING & FINANCIAL

By: _____

Title: _____

Date: __11/17/99__

ABC BUS LEASING, INC.

By: _____

Title: _President_

Date: __11/16/99__

## SPECIFICATION OF ASSIGNED INTEREST NO. _____

Executed pursuant to the Master Assignment Agreement dated as of the __8th__ day of __November__, 1999, (the "Agreement"), by and between ABC Bus Leasing, Inc., as Assignor, and U.S. Bancorp Leasing & Financial, as Assignee.

This Specification is dated and effective as of the date set forth below and incorporates the terms and conditions of the Agreement.

1.  Lessee / ~~Borrower~~   R.J. Rhodes Transit, Inc.

2.  Date of Lease Schedule / ~~Promissory Note~~: March 22, 2000
    Lease Schedule No. (if any): 47755-500
    Date of Master Lease:
    Master Lease No. (if any):

3.  Capitalized Cost of Vehicle: $ 265,000.00

4.  Remaining installments due under the Lease Schedule / ~~Promissory Note~~: 62
    ( Sixty-two ) monthly/~~quarterly~~ payments in advance/~~arrears~~,
    each in the amount of $ 2,500.00 = 1st payment
    0.00   2nd payment
    $ 5,175.00 = 3 - 62 payments

5.  Consideration: $ 265,000.00  and  $7,000.00

6.  Schedule "A" attached hereto is incorporated in and made a part of this Specification of Assigned Interest.

7.  Closing Date: March 31, 2000

8.  Description of Vehicle: 1995 MCI 102DL3

               Serial No. 1M8PDMPA5SP047755

Date of Execution: March 24, 2000

| Assignor: | Assignee: |
|---|---|
| ABC BUS LEASING, INC. | U.S. BANCORP LEASING & FINANCIAL |
| _/s/ Gregg Goedde_ | _/s/ Gregg Morris_ |
| By: Gregg Goedde | By: George Morris |
| Name | Name |
| Its: Vice President | Its: Credit Officer |
| Title | Title |



**Equipment Finance**

7659 SW Mohawk
Tualatin, OR 97062

VIA CERTIFIED MAIL
(Return Receipt Requested)
& 1ST CLASS U.S. MAIL

March 28, 2002

R.J. Rhodes Transit, Inc.
2990 Duss Avenue
Ambridge, PA  15003

CCAN:          29210001

## NOTICE OF PRIVATE SALE

PLEASE TAKE NOTE that you are hereby provided Notice of Private Sale in accordance with US Bancorp Equipment Finance's Lease Agreement.

You are hereby notified that as a result of a default under the Schedule To Lease Agreement between R.J. Rhodes Transit, Inc., and ABC Bus Leasing, Inc. which assigned its interests to U.S. Bancorp Equipment Finance (formally known as US Bancorp Leasing & Financial) dated 12/17/98, US Bancorp Equipment Finance will sell, lease or otherwise dispose of the following described property pertaining to contract# 012-9210001-003:

          One (1) 1995 MCI 102DL3 Coach, Vin# 1M8PDMPA5S9047755

Please be informed US Bancorp Equipment Finance intends to sell, lease or otherwise dispose the leased equipment by private sale after 4/8/02. You may redeem the leased equipment at anytime prior to that date by paying $263,130.63, plus all costs incurred in connection with the enforcement of the remedies of the lease which is the current amount of debt to US Bancorp Equipment Finance.

If you do not redeem the Leased Equipment, it will be sold, and the proceeds, after sale and related expenses, will be applied to the indebtedness due under the Lease Agreement. US Bancorp Equipment Finance will pursue its remedies available pursuant to the terms of the Lease Agreement for any resulting deficiency.

You are entitled to an accounting of the unpaid indebtedness secured by the property that we intend to sell for a charge of $100.00.  You may request an accounting by calling the undersigned as given below.

You may contact the undersigned at (503) 797-0815 to make arrangements for resolving this matter.

US Bancorp Equipment Finance

By: _____
          David A Higgins
          Special Assets Coordinator

cc:     Robert J. Rhodes, Guarantor
          R & S Transportation Services, Inc.
          Duetsche Financial Services Corporation
          Associates RV Finance Company
          Integra Bank/Pittsburg
          M&T Bank
          File

U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

OFFICIAL USE

Postmark Here

Postage $

Certified Fee

Return Receipt Fee
(Endorsement Required)

Restricted Delivery Fee
(Endorsement Required)

Total Postage & Fees $

Sent To R.J. Rhodes Manatt Inc.

Street, Apt. No; 2990 Duss Avenue
or PO Box No.

City, State, Ziv Ambridge, Pa. 15003

PS Form 3800, January 2001                See Reverse for Instructions

7001 1140 0003 1774 0868

7001 1140 0003 1774 0868

CERTIFIED MAIL

**US bancorp.**
Five Star Service Guaranteed

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

R.J. Rhodes Manatt Inc.
2990 Duss Avenue
Ambridge, Pa. 15003

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)  B. Date of Delivery 4-1-22

C. Signature
☐ Agent
☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number   7001 1140 0003 1774 0868

PS Form 3811, March 2001   Domestic Return Receipt   102595-01-M-1424



**Equipment Finance**

7659 SW Mohawk
Tualatin, OR 97062

VIA CERTIFIED MAIL
(Return Receipt Requested)
& 1ST CLASS U.S. MAIL

March 28, 2002

R & S Transportation Services, Inc. Rhodes Transit, Inc.
2990 Duss Avenue
Ambridge, PA 15003

CCAN:        29210001

## GUARANTOR'S NOTICE OF PRIVATE SALE

PLEASE TAKE NOTE that you are hereby provided Notice of Private Sale in accordance with US Bancorp Equipment Finance's Lease Agreement.

You are hereby notified that as a result of a default under the Schedule To Lease Agreement between R.J. Rhodes Transit, Inc., and ABC Bus Leasing, Inc. which assigned its interests to U.S. Bancorp Equipment Finance (formally known as US Bancorp Leasing & Financial) and guaranteed by R & S Transportation Services, Inc. dated 12/17/98, US Bancorp Equipment Finance will sell, lease or otherwise dispose of the following described property pertaining to contract# 012-9210001-003:

One (1) 1995 MCI 102DL3 Coach, Vin# 1M8PDMPA5S9047755

Please be informed US Bancorp Equipment Finance intends to sell, lease or otherwise dispose the leased equipment by private sale after 4/8/02. You may redeem the leased equipment at anytime prior to that date by paying $263,130.63, plus all costs incurred in connection with the enforcement of the remedies of the lease which is the current amount of debt to US Bancorp Equipment Finance.

If you do not redeem the Leased Equipment, it will be sold, and the proceeds, after sale and related expenses, will be applied to the indebtedness due under the Lease Agreement. US Bancorp Equipment Finance will pursue its remedies available pursuant to the terms of the Lease Agreement for any resulting deficiency.

You are entitled to an accounting of the unpaid indebtedness secured by the property that we intend to sell for a charge of $100.00. You may request an accounting by calling the undersigned as given below.

You may contact the undersigned at (503) 797-0815 to make arrangements for resolving this matter.

US Bancorp Equipment Finance

By: _____
       David A Higgins
       Special Assets Coordinator

cc:    R.J. Rhodes Transit, Inc.
       Robert J. Rhodes, Guarantor
       Duetsche Financial Services Corporation
       Associates RV Finance Company
       Integra Bank/Pittsburg
       M&T Bank
       File

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

U.S. Transportation Realities Inc.

Charles Turiot Ave.
2990 Dukes Avenue
Dukes Pa. 15003

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)   B. Date of Delivery
CHATHAM L OBERLIN   4-12

C. Signature
X                             □ Agent
                              □ Addressee

D. Is delivery address different from item 1?  □ Yes
   If YES, enter delivery address below:        □ No

3. Service Type
   □ Certified Mail   □ Express Mail
   □ Registered       □ Return Receipt for Merchandise
   □ Insured Mail     □ C.O.D.

4. Restricted Delivery? (Extra Fee)   □ Yes

2. Article Number
7001 1140 0003 1774 0875

PS Form 3811, March 2001   Domestic Return Receipt   102595-01-M-1424

CERTIFIED MAIL

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS. FOLD AT DOTTED LINE

usbancorp

Transit, Inc.

7001 1140 0003 1774 0875

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
**(Domestic Mail Only; No Insurance Coverage Provided)**

OFFICIAL USE

Postage   $
Certified Fee
Return Receipt Fee
(Endorsement Required)
Restricted Delivery Fee
(Endorsement Required)
Total Postage & Fees   $

Postmark
Here

U.S Transportation Realities Inc.
Charles Turiot Ave.
2990 Dukes Avenue
Dukes Pa. 15003

7001 1140 0003 1774 0875

PS Form 3800, March 2001   See Reverse for Instructions



**Equipment Finance**

7659 SW Mohawk
Tualatin, OR 97062

VIA CERTIFIED MAIL
(Return Receipt Requested)
& 1ST CLASS U.S. MAIL

March 28, 2002

Robert J. Rhodes
2990 Duss Avenue
Ambridge, PA 15003

CCAN:        29210001

### GUARANTOR'S NOTICE OF PRIVATE SALE

PLEASE TAKE NOTE that you are hereby provided Notice of Private Sale in accordance with US Bancorp Equipment Finance's Lease Agreement.

You are hereby notified that as a result of a default under the Schedule To Lease Agreement between R.J. Rhodes Transit, Inc., and ABC Bus Leasing, Inc. which assigned its interests to U.S. Bancorp Equipment Finance (formally known as US Bancorp Leasing & Financial) and guaranteed by Robert J. Rhodes dated 12/17/98, US Bancorp Equipment Finance will sell, lease or otherwise dispose of the following described property pertaining to contract# 012-9210001-003:

One (1) 1995 MCI 102DL3 Coach, Vin# 1M8PDMPA5S9047755

Please be informed US Bancorp Equipment Finance intends to sell, lease or otherwise dispose the leased equipment by private sale after 4/8/02. You may redeem the leased equipment at anytime prior to that date by paying $263,130.63, plus all costs incurred in connection with the enforcement of the remedies of the lease which is the current amount of debt to US Bancorp Equipment Finance.

If you do not redeem the Leased Equipment, it will be sold, and the proceeds, after sale and related expenses, will be applied to the indebtedness due under the Lease Agreement. US Bancorp Equipment Finance will pursue its remedies available pursuant to the terms of the Lease Agreement for any resulting deficiency.

You are entitled to an accounting of the unpaid indebtedness secured by the property that we intend to sell for a charge of $100.00. You may request an accounting by calling the undersigned as given below.

You may contact the undersigned at (503) 797-0815 to make arrangements for resolving this matter.

US Bancorp Equipment Finance

By: _____

David A Higgins
Special Assets Coordinator

cc:     R.J. Rhodes Transit, Inc.
        R & S Transportation Services, Inc.
        Duetsche Financial Services Corporation
        Associates RV Finance Company
        Integra Bank/Pittsburg
        M&T Bank
        File

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Robert J. Rhodes
2990 Duss Avenue
Ambridge, Pa. 15003

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)   B. Date of Delivery

C. Signature
X   ☐ Agent   ☐ Addressee

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number   7001 1140 0003 1774 2510

PS Form 3811, March 2001   Domestic Return Receipt   102595-01-M-1424

**CERTIFIED MAIL**

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

usbancorp

7001 1140 0003 1774 2510

7001 1140 0003 1774 2510

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

O F F I C I A L   U S E

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To   Robert J. Rhodes
Street, Apt. No.; or PO Box No.   2990 Duss Avenue
City, State, ZIP+4   Ambridge, Pa. 15003

PS Form 3800, January 2001   See Reverse for Instructions

# LEWIS & SARGENT LLC
### ATTORNEYS AT LAW
2793 NOBLESTOWN ROAD
PITTSBURGH, PA 15205-4258

TELEPHONE: 412.928.0101
FAX: 412.928.8738

Dennis J. Lewis
Direct Dial: 412.928.8733

e-mail: dlewis@lsrlawfirm.com

March 21, 2005

*VIA CERTIFIED MAIL*

Mr. Robert J. Rhodes
R.J. Rhodes Transit, Inc.
R & S Transportation Services, Inc.
2990 Duss Avenue
Ambridge, PA 15003

Re:   *Breach by R.J. Rhodes Transit, Inc. of Commercial Transportation Lease*
      *Breach by R & S Transportation Services, Inc. of Corporate Guaranty*
      *Breach by Robert J. Rhodes of Individual Guaranty*
      *Demand for Payment by U.S. Bancorp Equipment Finance, Inc.*

Dear Mr. Rhodes:

   We represent U.S. Bancorp Equipment Finance, Inc., f/k/a U.S. Bancorp Leasing & Financial ("U.S. Bancorp") with respect to the Commercial Transportation Lease (the "Lease") dated March 22, 2000, between R.J. Rhodes Transit, Inc. ("RJR Transit") and ABC Bus Leasing, Inc. ("ABC"), under which RJR Transit leased One 1995 MCI 102DL3 Motor Coach, VIN 1M8PDMPA5SP047755 with a capitalized cost of $265,000 (the "Motor Coach") from ABC.

   R & S Transportation Services, Inc. ("R & S") entered into a Corporate Guaranty dated March 22, 2000 (the "Corporate Guaranty") and Robert J. Rhodes ("Rhodes" or "you") entered into an Individual Guaranty dated March 22, 2000 (the "Individual Guaranty"), both of which guaranteed the performance by RJR Transit of its obligations under the Lease. True and correct copies of the Lease, Corporate Guaranty and Individual Guaranty are attached hereto.

   As you know, ABC assigned its rights and interests in the Lease, Corporate Guaranty and Individual Guaranty to U.S. Bancorp. Accordingly, all obligations owed by RJR Transit, R & S and Rhodes under the Lease, Corporate Guaranty and Individual Guaranty are owed to U.S. Bancorp as assignee.

Mr. Robert J. Rhodes
R.J. Rhodes Transit, Inc.
R & S Transportation Services, Inc.
March 21, 2005
Page 2


Pursuant to the Lease Agreement, RJR Transit was obligated to make one rental payment in the amount of $2,500.00 on April 1, 2000, followed by sixty (60) consecutive monthly rental payments in the amount of $5,175.00 commencing on June 1, 2000. *See* Exhibit C to the Lease. At the end of the lease term, RJR Transit was obligated to make a terminal rental adjustment payment to ABC in the amount of 10% of the capitalized cost of the Motor Coach, which amount equals $26,500. *See* Lease Agreement ¶¶ 11, 12 and Exhibit S to the Lease Agreement. In total, RJR Transit was obligated to pay $339,500 under the Lease, which amount includes the lease payments and the terminal rental adjustment, but does not include any late fees or fees and costs related to default.

As you know, RJR Transit breached the Lease. RJR Transit last made a partial rental payment under the Lease on April 27, 2001, in the amount of $3,694.28. RJR Transit made only 10.71 of the 60 monthly $5,175 rental payments due under the Lease. In total, RJR Transit has paid only $57,944.28 in monthly rental payments due under the Lease.

Despite repeated demands for payment, R & S and Rhodes have breached the Corporate Guaranty and Individual Guaranty, respectively, by failing and refusing to honor the obligations of RJR Transit under the Lease following RJR Transit's default.

U.S. Bancorp repeatedly has attempted to resolve this matter with you, as the president of RJR Transit and R & S, and with you, individually, as the guarantor on the Individual Guaranty, without success. U.S. Bancorp has authorized us to file suit against you, RJR Transit and R & S within fourteen (14) days from the date of this letter unless this matter is successfully resolved before that deadline.

In that respect, U.S. Bancorp is due the following in damages as a result of RJR Transit's breach of the Lease:

| | |
|---|---|
| Stipulated Loss as of the Date of Default (*See* Lease ¶ 17 and Exhibit S to Lease) | $245,628.50 |
| + Terminal Rental Adjustment (*See* Lease ¶¶ 12 and 17) | + $26,500.00 |
| + Late Fees (*See* Lease ¶ 9) | + $4,006.25 |
| = Default Damages | = $276,134.75 |
| + Accumulated Interest at the rate of 7% from the date of default to the date of sale of the Motor Coach (March 26, 2002) | + $17,634.79 |

Mr. Robert J. Rhodes
R.J. Rhodes Transit, Inc.
R & S Transportation Services, Inc.
March 21, 2005
Page 3

| | |
|---|---|
| = <u>Default Damages w/ Interest</u><br>(through date of Motor Coach sale) | = $<u>293,769.54</u> |
| - Net Proceeds of Motor Coach sale<br>(Sold for $190,000 - $10,466.17 in commissions) | - $179,533.83 |
| = <u>Default Damages Following Motor Coach Sale</u> | = $<u>114,235.71</u> |
| + Accumulated Interest at the rate of 7%<br>from the date of sale through March 21, 2005 | + $23,879.95 |
| = <u>Total Default Damages as of March 21, 2005</u><br>(not including attorneys' fees and other enforcement<br>costs related to RJR Transit's breach) | = $<u>138,115.66</u> |

The total due U.S. Bancorp as of March 21, 2005, as explained above, is $138,115.66. The amount due U.S. Bancorp is increasing daily. Should this matter proceed to litigation, there will be additional fees and expenses, including attorneys' fees and enforcement costs.

We demand payment in full, in the amount of $138,115.66, on or before April 4, 2005, or suit will be filed against you.

Yours very truly,

LEWIS & SARGENT LLC

Dennis J. Lewis

DJL/wjl
Enclosures

Certified Mail No. 7003 0500 0001 7589 9028
Return Receipt Requested

## Commercial Transportation Lease Agreement

This Lease Agreement (the "Agreement") effective as of ___March 22, 2000___, entered into by and between ABC Bus Leasing, Inc., a Florida corporation ("Lessor"), and the undersigned the ("Lessee"). If more than one party executes this Agreement as Lessee, each shall be jointly and severally liable hereunder.

1. **LEASE; DISCLAIMER.** Lessor hereby agrees to lease to Lessee and Lessee hereby agrees to lease from Lessor certain Vehicles for us in its business. Lessee's lease of a Vehicle shall be effective on the date Lessee accepts the Vehicle for Lease hereunder. Lessor hereby assigns the manufacturer's warranty to Lessee for the lease Term. LESSEE AGREES THAT THE LESSOR IS NOT THE MANUFACTURER, DESIGNER OR DISTRIBUTOR OF, THE VEHICLES AND THAT EACH VEHICLE IS OF A DESIGN SELECTED BY LESSEE AND SUITABLE FOR ITS PURPOSES. ALL VEHICLES ARE LEASED "AS IS". LESSOR MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO ANY VEHICLE INCLUDING, BUT NOT LIMITED TO: THE MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF A VEHICLE; THE DESIGN, QUALITY OR CAPACITY OF A VEHICLE; OR COMPLIANCE OF A VEHICLE WITH APPLICABLE LAW.

2. **DELIVERY.** Lessee shall inspect a Vehicle at the location of delivery. Lessee's removal of a Vehicle from such location shall constitute acceptance of the Vehicle and Lessee's warranty to Lessor that the Vehicle conforms to Lessee's specifications. Lessee agrees that Lessee's obligation to pay rent and other amounts with respect to such Vehicle shall be unconditional and that Lessee shall not be entitled to any reduction of, or setoff against, such amounts (provided, however, that any such payment shall not prejudice Lessee's right to claim adjustment or reimbursement).

3. **TERM OF AGREEMENT.** This Agreement shall commence on the date set forth above, and continue until canceled or terminated by either party upon 30 days' written notice to the other. Notwithstanding termination, this Agreement shall remain in effect with respect to each Vehicle then leased until all terms and conditions of this Agreement are satisfied.

4. **LEASE TERM.** The noncancelable minimum Lease Term for each Vehicle is 367 days beginning upon the first periodic period payment date. Thereafter, the Lease Term may be renewed each payment period, provided that such renewals shall not extend the Lease term beyond the Lease term set in Exhibit C hereto.

5. **OPERATION.** Lessee shall operate the Vehicles solely in the United States (Lessee acknowledges that breach of such covenant could adversely affect Lessor's assumed tax benefits and thereby subject Lessee to liability therefore) and in accordance with applicable federal, state and local law governing the use, operation, maintenance or alteration of the Vehicles. Lessee agrees to repair the Vehicles and to maintain them in safe and good mechanical condition and running order. All additions to a Vehicle become the property of Lessor and shall be surrendered with the Vehicle. NO VEHICLES MAY BE USED TO TRANSPORT HAZARDOUS SUBSTANCES.

6. **NET LEASE.** Lessee covenants that it will pay all costs, expenses, fees, charges, fines, interest, and taxes, including, without limitation, sales, property and use taxes, incurred in connection with the Vehicle's titling, registration, delivery, purchase, sale, rental, modification, and arising from the ownership, operation or use of the Vehicle during its Lease Term regardless of when assessed or payable. If Lessor pays any of the foregoing amounts, Lessee shall promptly reimburse Lessor and pay Lessor's then current administrative charge.

7. **TITLE; REGISTRATION.** Lessee, at its own expense, will obtain all required registration plates, permits or licenses for the Vehicles. If Lessor pays for any of the foregoing, Lessee will promptly reimburse Lessor. Lessee agrees to properly title and register the Vehicles in Lessor's name and, if Lessee is in possession of the title, to promptly deliver the title to Lessor. Lessee will bear all costs and expenses, including Lessor's administrative fee, to correct incorrect titles.

8.  **RENTAL CHARGES.** Lessee will pay rental for the Vehicles in accordance with the relevant Exhibits, as well as all other rental charges provided for in this Agreement. Notwithstanding any provisions hereof to the contrary, the failure of Lessee to receive an invoice for such payments or to receive invoices on a timely basis shall not excuse or otherwise modify payment terms provided for herein or in Exhibits hereto.

Lessee acknowledges that the periodic rental charges are based on a presumed after-tax return to Lessor. If any changes in federal or state tax laws or regulations (including a change in corporate income tax rate) cause Lessor's after-tax return to be reduced or impact the ability of Lessor to realize the full tax benefits contemplated herein, Lessor may, in compensation, prospectively adjust the periodic rental charges.

9.  **PAYMENT TERMS.** Time is of the essence. Lessee shall pay to Lessor a late payment charge in the amount of the greater of (i) $25.00 or (ii) 5% per month or fraction thereof of any invoice, the payment of which is not in the possession of Lessor on or before the tenth (10th) day after the due date of the payment (or if such 10th day falls on a weekend or holiday, then the immediately preceding business day), but in no event shall such late charges exceed the highest legal rate. It is the intent of Lessor that it not receive directly or indirectly any amount in excess of that amount which may be legally paid. Any excess charges will be credited to Lessee or, upon request of Lessee, refunded. Lessee agrees to carefully review each invoice or other statement provided by Lessor. If Lessee identifies a billing error, Lessee will advise Lessor promptly and in such event, Lessor's sole liability and Lessee's exclusive remedy shall be appropriate adjustments in Lessee's account. All charges are based upon Lessor's standard operating routines, existing business policy and computer systems capabilities.

10. **SURRENDER OF VEHICLES.** At the end of the minimum Lease Term. Lessee may, and at the end of the Lease Term, Lessee shall, upon reasonable written notice to Lessor, either purchase the Vehicle for its then fair market value or return the Vehicle to Lessor by delivering the Vehicle to Lessor at a mutually agreed location. Upon surrender or, if not surrendered, at final disposition, the Vehicle shall be in good, safe and lawful operating condition. Surrender of the Vehicle shall not be effective until Lessor has actual physical possession of the Vehicle and has received all license plates, registration certificates, documents of title, odometer and damage disclosures and other documentation necessary for the sale of the Vehicle. If, upon Lessee request, Lessor accepts an offer to purchase a Vehicle from a Lessee or a purchaser identified by Lessee and Lessor does not take actual physical possession of the Vehicle, neither surrender nor sale shall be deemed to occur until Lessor delivers the certificate of title and receives payment. Any personal property in a Vehicle upon surrender shall be deemed abandoned and may be disposed of by Lessor without liability.

11. **SALE OF VEHICLES.** In the event Lessee elects not to exercise its purchase option, Lessor shall, and Lessee may, solicit from prospective purchasers wholesale cash bids for Vehicles. Such Vehicles shall be sold in a commercially reasonable manner. From the sales proceeds, Lessor shall deduct all unamortized acquisition fees, sales expenses paid or incurred by Lessor in undertaking such sale and any late fees, taxes or other amounts due with respect to the Vehicles, regardless of when assessed or payable, the balance remaining to constitute the Net Proceeds which shall be payable to Lessor. If Lessor sells any vehicle owned by Lessee or a third party, Lessee agrees that the sale of such vehicle shall be subject to the indemnity herein and to pay Lessor's then current sale fee.

12. **TERMINAL RENTAL ADJUSTMENT.** As an incentive to the Lessee to maintain the value of the Vehicle by good maintenance, repair and careful use during its Lease Term, the parties agree that the enhancement or reduction in value shall be compensated as follows:

   a.  **Refund of Rental.** If the Net Proceeds from the sale to either Lessee or a third party exceed the Stipulated Loss Value (as defined in Exhibit S), Lessor shall retain an amount equal to the Stipulated Loss Value, and remit the excess to Lessee as a refund of rental.

b.  Rental Charge.  If the Net Proceeds from the sale to either Lessee or a third party are less than the Stipulated Loss Value, Lessee shall pay Lessor the amount of the difference between the Net Proceeds and the Stipulated Loss Value.

13. INSURANCE.  Before delivery of any Vehicle, Lessee shall purchase from a responsible insurance company acceptable to Lessor and Lessee shall maintain, during the Lease Term of each Vehicle, the following coverages and deliver to Lessor a certificate thereof:

a.  Liability Insurance naming Lessor as an Additional Insured with limits of coverage as Lessor may require, but in no event less than $1 million combined single limit per occurrence ($5 million for Vehicles capable of transporting nine (9) or more passengers).  No self-insured retention or deductible is permissible unless approved in writing by Lessor.

b.  Comprehensive and collision Insurance naming Lessor as Loss Payee with coverage for the actual cash value of each Vehicle and subject to a deductible no greater than the following amounts unless approved by Lessor:  $5,000 for intercity coaches; $2,500 for school buses, shuttle buses and vans and ambulances; $1,000 for medium and heavy duty trucks and trailers, tool trucks, tow trucks and tire service trucks.  Lessee shall also obtain no-fault insurance complying with applicable legal requirements.  Lessee shall bear all risk of loss, damage or destruction to the Vehicle (which may exceed actual cash value), however caused, from the time of acceptance until surrender to Lessor.

c.  Conditions.  All Insurance policies shall provide for 30 days' prior written notice to Lessor of any cancellation or reduction in coverage.  Lessor has no obligation to examine insurance certificates or to advise Lessee if its insurance is not in compliance with this Agreement.  Lessee authorizes Lessor to endorse Lessee's name to insurance checks related to the Vehicles and to take any actions to pursue insurance claims and recover payments if Lessee fails to do so.

d.  Casualty.  In the event for any reason a Vehicle becomes worn out, lost, stolen, destroyed or unusable (herein, each, a "Loss"), on the rental payment date next succeeding the occurrence of such Loss, Lessee shall pay to Lessor the sum of (x) the Stipulated Loss Value of the affected Vehicle (determined as of the rental payment date immediately preceding the date of such Loss), and (y) all rent and other amounts which are then due under this Agreement.  Upon payment of all such sums, the term of this lease as to such affected Vehicle shall terminate.  So long as no event of default shall have occurred and be continuing, any insurance proceeds attributable to such Vehicle shall be payable to reimburse Lessee for the payments required hereunder up to the amount of the Stipulated Loss Value.  Lessee understands that such Stipulated Loss Value may exceed the actual cash value of the Vehicle as determined by the insurer of the Vehicle and that Lessee remains required to pay the entire amount due hereunder.

14. INDEMNITY.  LESSEE WILL INDEMNIFY AND DEFEND LESSOR (INCLUDING ANY OF ITS AFFILIATES) AGAINST ANY LOSS, LIABILITY OR CLAIM DIRECTLY OR INDIRECTLY RELATING TO THE OWNERSHIP, LEASE, MAINTENANCE, USE, CONDITION (INCLUDING BUT NOT LIMITED TO, PATENT AND LATENT DEFECTS WHETHER OR NOT DISCOVERABLE, PRODUCT LIABILITY CLAIMS OR THE CONDITION OF THE VEHICLE AT SURRENDER) OR SURRENDER OF ANY VEHICLE BETWEEN THE TIME OF DELIVERY TO LESSEE AND THE TIME OF SURRENDER.  IF LESSOR SELLS ANY VEHICLE TO LESSEE, ANY OF ITS EMPLOYEES OR A PURCHASER FROM WHOM LESSEE OBTAINS AN OFFER, LESSEE'S COVENANTS OF INDEMNITY WITH RESPECT TO SUCH VEHICLE SHALL CONTINUE.  THIS INDEMNITY IS ABSOLUTE AND UNCONDITIONAL AND INCLUDES CLAIMS OF NEGLIGENCE, STRICT LIABILITY, ENVIRONMENTAL LIABILITY AND BREACH OF WARRANTY, BUT DOES NOT EXTEND TO CLAIMS OR LIABILITY ARISING FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF LESSOR, ITS AGENTS OR EMPLOYEES.  THIS INDEMNITY SHALL SURVIVE THE TERMINATION OF THIS AGREEMENT.

15. **NATURE OF AGREEMENT.** THE PARTIES INTEND ALL LEASES OF VEHICLES HEREUNDER TO BE TRUE LEASES. Lessee has no right, title or interest in and to any Vehicle leased hereunder except as Lessee, and Lessee has no option to purchase any Vehicle for any amount less than its fair market value. Lessor has the right to mark the Vehicle at any time stating its interest as owner and to receive and retain compensation related to the Vehicles from manufacturers, suppliers and vendors. Without prejudice to the intention of the parties that this Agreement be a true lease, Lessee hereby grants Lessor a security interest in the Vehicles, all vehicles and other equipment and property subject to other leases or loans with Lessor, and all proceeds, accessions, documents, instruments, accounts, chattel paper, equipment and general intangibles related thereto to secure all of Lessee's obligations under this or any other agreement with Lessor. Lessee hereby grants Lessor its power of attorney to act for and on behalf of Lessee in all matters pertaining to the titling and registration of Vehicles and the filing, recording or perfecting of Lessor's interest and title in the Vehicles, including execution of Uniform Commercial Code financing statements, and agrees to execute such other documents as may be necessary to effect or evidence such grant. A photocopy or other reproduction of this Agreement shall be sufficient as a financing statement.

16. **FINANCIAL STATEMENTS; INSPECTIONS.** The creditworthiness of Lessee and any guarantor is a material condition to this Agreement. Lessee shall provide Lessor with financial information reasonably requested by and satisfactory to Lessor each year of this Agreement. Nothing herein shall be construed to require Lessor to lease any vehicle. Lessor may inspect the Vehicles and related records at any time upon reasonable notice.

17. **DEFAULT; REMEDIES.** If Lessee shall fail to make the payments, maintain insurance coverage or title any Vehicle properly and in a timely manner, all as herein required or after 10 days' written notice shall fail to perform any of its other covenants under this Agreement, or Lessee or any guarantor shall (i) make an assignment for the benefit of creditors, or suffer a receiver or trustee to be appointed, or file or suffer to be filed any petition under any bankruptcy or insolvency law of any jurisdiction, or (ii) discontinue business; or (iii) dissolve, terminate, cease its corporate or partnership existence or die; or (iv) be in default under any other agreement it may have with Lessor or any parent, subsidiary or affiliate of Lessor; or (v) suffer a material adverse change in operating or financial condition which impairs Lessee's ability to perform its obligations hereunder or Lessor's title to or rights in the Vehicles; or (vi) make any representation or warranty herein, or in any document delivered to Lessor in connection herewith, which shall prove to be false or misleading in any material respect; or (vii) merge, consolidate, or undergo a change in controlling ownership; or (viii) be in default under any other agreement it may have with Lessor or any parent, subsidiary or affiliate of Lessor; then in such event Lessee shall be in default under this Agreement. A default under the terms of this Agreement shall constitute a default under any other agreement Lessee has with Lessor, or any parent, subsidiary or affiliate of Lessor. Lessor shall have the right to offset any amounts due to Lessee against amounts due to Lessor and all rights and remedies available at law or in equity including, without limitation, the right to repossess any and all Vehicles leased hereunder (and for that purpose, Lessor or its agents may enter upon any premises owned or under the control of Lessee or any of its employees or affiliates). Notwithstanding repossession and sale of any Vehicle, Lessor may recover from Lessee all damages sustained as a result of Lessee's default, and is not accountable to Lessee for any proceeds of any such sale. Such damages shall include but not be limited to: the full amount of rentals then due and unpaid, the Stipulated Loss Value of the Vehicles calculated pursuant to Exhibit S as of the rental payment date immediately preceding the default, and all other amounts of any nature due under this Agreement, including, without limitation any amounts due as terminal rental adjustments, together will all costs of collection and repossession including attorneys' fees and collection fees. All of Lessor's rights and remedies shall be cumulative and not exclusive.

18. **NO CONSEQUENTIAL DAMAGES.** In no event shall Lessor be liable for any loss of profits, other consequential damages or inconvenience resulting from any delay in delivery, theft, damage to, loss of, defect in or failure of any Vehicle, or the time consumed in recovering, repairing, adjusting, servicing, or replacing same and there shall be no abatement or apportionment of rental during such time. EXCEPT WITH RESPECT TO LESSEE'S OBLIGATIONS OF INDEMNITY HEREUNDER, EACH PARTY AGREES THAT: ITS SOLE AND EXCLUSIVE REMEDY FOR ANY MATTER OR CAUSE OF ACTION RELATED DIRECTLY OR INDIRECTLY TO ANY BREACH BY THE OTHER PARTY OF THIS AGREEMENT

SHALL BE A CONTRACT ACTION; DAMAGES SHALL BE LIMITED TO ACTUAL AND DIRECT DAMAGES INCURRED; AND NO INDIRECT, CONSEQUENTIAL OR PUNATIVE DAMAGES WILL BE CLAIMED.

19. **ASSIGNMENTS.** LESSEE SHALL NOT ASSIGN, SUBLET, LIEN, ENCUMBER, OR TRANSFER ANY INTEREST IN ANY OF THE VEHICLES LEASED HEREUNDER OR ANY INTEREST IN THIS AGREEMENT TO ANY PARTY WITHOUT THE WRITTEN CONSENT OF LESSOR. ANY SUCH CONSENT BY LESSOR SHALL NOT RELIEVE LESSEE OF ITS OBLIGATIONS AND LIABILITIES. Lessor may assign all or any part of its right, title and interest in this Agreement or the Vehicles, including all receivables.

20. **RELATED ENTITLES.** Any Vehicles leased or operated by present or future subsidiaries, parents or affiliates of Lessee shall be within the terms and conditions of this Agreement, unless covered by a separate agreement with such subsidiary, parent or affiliate, and Lessee agrees that, in the event such subsidiary, parent or affiliate does not perform according to the terms and conditions of this Agreement, Lessee guarantees such performance.

21. **WAIVER OF JURY TRIAL.** BOTH PARTIES TO THIS AGREEMENT HEREBY WAIVE ANY AND ALL RIGHT TO ANY TRIAL BY JURY IN ANY ACTION OR PROCEEDINGS DIRECTLY OR INDIRECTLY HEREUNDER.

22. **GOVERNING LAW.** THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL IN ALL RESPECTS BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF FLORIDA (WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES OF SUCH STATE), INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, REGARDLESS OF THE LOCATION OF THE VEHICLES. THE PARTIES FURTHER AGREE THAT ALL ACTIONS OR PROCEEDINGS ARISING, DIRECTLY OR INDIRECTLY, FROM THIS AGREEMENT, SHALL BE LITIGATED, AT THE OPTION OF LESSOR, IN COURTS HAVING SITUS WITHIN THE STATE OF FLORIDA, AND LESSEE HEREBY CONSENTS TO THE PERSONAL JURISDICTION OVER LESSEE BY ANY LOCAL, STATE OR FEDERAL COURT SELECTED BY LESSOR THAT IS LOCATED WITHIN THE STATE OF FLORIDA. LESSEE WAIVES ANY OBJECTION TO VENUE IN ANY SUCH ACTION AND AGREES NOT TO DISTURB SUCH CHOICE OF FORUM BY LESSOR. LESSEE HEREBY CONSENTS TO SERVICE OF PROCESS BY MAIL AND THAT SUCH SERVICE BY MAILING SHALL CONSTITUTE DUE AND PERSONAL SERVICE UPON LESSEE.

23. **ODOMETER DISCLOSURE STATEMENT.** Federal law (and State law, if applicable) requires that Lessee as lessee disclose, and Lessee shall disclose, the mileage of each Vehicle to Lessor in connection with the transfer of ownership of the Vehicle. Failure to complete an odometer disclosure statement or making a false statement may result in fines and/or imprisonment. LESSEE AGREES TO PAY AN ADMINISTRATIVE FEE IF LESSEE FAILS TO PROVIDE A REQUIRED ODOMETER OR DAMAGE DISCLOSURE STATEMENT AT TIME OF SURRENDER.

24. **MODIFICATIONS.** This Agreement, its Exhibits, Schedules and amendments contain the entire understanding of the parties and merge all oral understandings. Purchase orders relating to Vehicles may be issued by Lessee for administrative convenience, but are subject to the terms and conditions of this Agreement and shall not amend or supplement it. ANY MODIFICATIONS, CHANGES, OR AMENDMENTS MAY BE MADE ONLY IN A WRITING DULY SIGNED BY LESSEE AND LESSOR. FAILURE OF EITHER PARTY TO ENFORCE ANY RIGHT GRANTED HEREIN SHALL NOT BE DEEMED A WAIVER OF SUCH RIGHT.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be signed by duly authorized representatives.

LESSOR:                                    LESSEE:

ABC BUS LEASING, INC.                      R.J. RHODES TRANSIT, INC.

By:_____            By: X_____
                                              Robert J. Rhodes

Its:____Vice President_____         Its:____President_____

Address: 25 4th Street N.W.                Address:  2990 Duss Avenue
          Faribault, MN  55021                       Ambridge, PA  15003

# EXHIBIT A

## Acceptance Notice

### To Schedule No. 001

Dated This _3/22/2000_

This Exhibit A is part of and subject to the Lease Agreement between ABC Bus Leasing, Inc.("LESSOR") and the undersigned ("LESSEE").

| Quantity | Year | Manufacturer | Serial No. | Model and Type of Equipment |
|---|---|---|---|---|
| One (1) | 1995 | MCI | 1M8PDMPA5SP047755 | 102DL3 motor coach |

The undersigned hereby confirms to LESSOR that the Vehicles referred to above have been delivered to and have been received by the undersigned; that all installation or other work necessary prior to the use thereof has been completed; that said Vehicles have been examined and/or tested and are in good operating order and condition and are in all respects satisfactory to the undersigned; and that said Vehicles have been fully accepted by the undersigned. LESSEE: **IF YOU EXECUTE THIS ACCEPTANCE NOTICE WITHOUT INSPECTING THE VEHICLES REFERRED TO HEREIN, YOU ASSUME ALL RESPONSIBILITY FOR ANY RESULTING LIABILITY AND ALL OF THE FOREGOING STATEMENTS WILL BE PRESUMED TRUE.**

The Vehicles immediately listed above are located at: 2990 Duss Avenue, Ambridge, PA 15003 . The Vehicles will be titled and registered at this location.

LESSEE:

R.J. RHODES TRANSIT, INC.

By: X _[signature]_
Robert J. Rhodes

Its: President

Date: X 03/22/00

**EXHIBIT C**
Rental Schedule No. 001
Uneven Rentals
Dated This_____

This Exhibit C is a part of and subject to that certain Lease Agreement (hereinafter the "Agreement"), dated  March 22, 2000 , between the LESSOR and the LESSEE set forth below.

| Number of Units | Capitalized Lessors Cost per Unit | Manufacturer | VIN Number | Model and Type of Equipment |
|---|---|---|---|---|
| One (1) | $255,000.00 | MCI | 1M8PDMPA5SP047755 | 102DL3 motor coach |

Lease Term (In Months, exclusive of any interim rental period):   62

Mileage allowance:     N/A
Excess mileage charge: N/A

The Capitalized Cost of each Vehicle is computed by adding the following amounts:

    (i)  The invoice price of the Vehicle including sales tax, if applicable; and
    (ii)  The invoice price of any authorized additions or modifications to the Vehicle made pursuant to LESSEE's request.

The Capitalized Cost of the Vehicle(s) is: $265,000.00

LESSEE shall pay to LESSOR the following rentals as specified herein:

    1)  Interim Rent: An amount equal to  Not Applicable—Dollars ($N/A) per day for the number of days from the acceptance date to, but not including, the first day of the first billing period, (such period being the interim rental period) due and payable on the Lease Commencement Date.

    2)  Basic Term Rent: Commencing on  April 1, 2000 , and on the same day of each month thereafter, LESSEE agrees to pay to LESSOR  Sixty-two (62)   consecutive monthly rental payments as follows:

| Payment(s) | In the Amount of |
|---|---|
| 1 – 1 | $2,500.00 |
| 2 – 2 | $    0.00 |
| 3 – 62 | $5,175.00 |

    3)  Advance Rent: Upon execution of this Exhibit, LESSEE agrees to pay to LESSOR the total amount of  Two Thousand Five Hundred and no/100—Dollars ($2,500.00) of which  Two Thousand Five Hundred and no/100—Dollars ($2,500.00) will be applied to the first rental as it becomes due and payable.

**LESSOR:**                                          **LESSEE:**

**ABC BUS LEASING, INC.**                    **R.J. RHODES TRANSIT, INC.**

By:_____          By:_____
                                                     Robert J. Rhodes

Title:   Vice President                        Title:    President

# EXHIBIT S
## STIPULATED LOSS VALUES

This Exhibit S is a part of and subject to that certain Commercial Transportation Lease Agreement (hereinafter the "Agreement"), dated __3/22/00__, between the LESSOR and the LESSEE set forth below.

LESSOR and LESSEE agree that the Stipulated Loss Value of any of the Vehicles referred to in the Exhibit A dated __3/22/00__, shall be an amount equal to the product of (i) the Capitalized Cost (as set forth in the relevant Exhibit C) and (ii) the percentage indicated below opposite the number of rental payments that have been made for such Vehicle.

| Payment | Percentage | Payment | Percentage |
|---|---|---|---|
| 12 | 92.69% | 42 | 45.32% |
| 13 | 91.27% | 43 | 43.63% |
| 14 | 89.84% | 44 | 41.93% |
| 15 | 88.40% | 45 | 40.22% |
| 16 | 86.95% | 46 | 38.50% |
| 17 | 85.50% | 47 | 36.77% |
| 18 | 84.04% | 48 | 34.53% |
| 19 | 82.57% | 49 | 32.78% |
| 20 | 81.09% | 50 | 31.02% |
| 21 | 79.60% | 51 | 29.25% |
| 22 | 78.10% | 52 | 27.47% |
| 23 | 76.60% | 53 | 25.68% |
| 24 | 74.59% | 54 | 23.88% |
| 25 | 73.07% | 55 | 22.06% |
| 25 | 71.53% | 56 | 20.24% |
| 27 | 70.00% | 57 | 18.40% |
| 28 | 68.45% | 58 | 16.56% |
| 29 | 66.89% | 59 | 14.70% |
| 30 | 65.33% | 60 | 12.83% |
| 31 | 63.75% | 61 | 10.95% |
| 32 | 62.17% | 62 | 10.00% |
| 33 | 60.58% | | |
| 34 | 58.97% | | |
| 35 | 57.36% | | |
| 36 | 55.24% | | |
| 37 | 53.61% | | |
| 38 | 51.97% | | |
| 39 | 50.32% | | |
| 40 | 48.66% | | |
| 41 | 46.99% | | |

ABC Bus Leasing, Inc.                    R.J. Rhodes Transit, Inc.

(LESSOR)                                 (LESSEE)

By _____              By _____
Its                                      Its  Robert J. Rhodes
    Vice President                           President

## CORPORATE GUARANTY

Date: X 05/22/00

ASC Bus Leasing, Inc.
25 4th Street N.W.
Faribault, MN 55021

To induce you to enter into, purchase or otherwise acquire, now or at any time hereafter, any promissory notes, security agreements, chattel mortgages, pledge agreements, conditional sale contracts, lease agreements, and/or any other documents or instruments evidencing, or relating to, any lease, loan, extension of credit or other financial accommodation (collectively "Account Documents" and each an "Account Document") to _R.J. Rhodes Transit, Inc._, a __Corporation__ organized and existing under the laws of the State of ___Pennsylvania___ ("Customer"), but without in any way binding you to do so, the undersigned, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, does hereby guarantee to you, your successors and assigns, the due, regular and punctual payment of any sum or sums of money which the Customer may owe to you now or at any time hereafter, whether evidenced by an Account Document, on open account or otherwise, and whether it represents principal, interest, rent, late charges, indemnities, an original balance, an accelerated balance, liquidated damages, a balance reduced by partial payment, a deficiency after sale or other disposition of any leased equipment, collateral or security, or any other type of sum of any kind whatsoever that the Customer may owe to you now or at any time hereafter, and does hereby further guarantee to you, your successors and assigns, the due, regular and punctual performance of any other duty or obligation of any kind or character whatsoever that the Customer may owe to you now or at any time hereafter (all such payment and performance obligations being collectively referred to as "Obligations"). Undersigned does hereby further guarantee to pay upon demand all losses, costs, attorneys' fees and expenses which may be suffered by you by reason of Customer's default or default of the undersigned.

This Guaranty is a guaranty of prompt payment and performance (and not merely a guaranty of collection). Nothing herein shall require you to first seek or exhaust any remedy against the Customer, its successors and assigns, or any other person obligated with respect to the Obligations, or to first foreclose, exhaust or otherwise proceed against any leased equipment, collateral or security which may be given in connection with the Obligations. It is agreed that you may, upon any breach or default of the Customer, or at any time thereafter, make demand upon the undersigned and receive payment and performance of the Obligations, with or without notice or demand for payment or performance by the Customer, its successors or assigns, or any other person. Suit may be brought and maintained against the undersigned, at your election, without joinder of the Customer or any other person as parties thereto. The obligations of each signatory to this Guaranty shall be joint and several.

The undersigned agrees that its obligations under this Guaranty shall be primary, absolute, continuing and unconditional, irrespective of and unaffected by any of the following actions or circumstances (regardless of any notice to or consent of the undersigned): (a) the genuineness, validity, regularity and enforceability of the Account Documents or any other document; (b) any extension, renewal, amendment, change, waiver or other modification of the Account Documents or any other document; (c) the absence of, or delay in, any action to enforce the Account Documents, this Guaranty or any other document; (d) your failure or delay in obtaining any other guaranty of the Obligations (including, without limitation, your failure to obtain the signature of any other guarantor hereunder); (e) the release, extension of time for payment or performance by, or any other indulgence granted to the Customer or any other person with respect to the Obligations by operation of law or otherwise; (f) the existence, value, condition, loss, subordination or release (with or without substitution) of, or failure to have title to or perfect and maintain a security interest in, or the time, place and manner of any sale or other disposition of any leased equipment, collateral or security given in connection with the Obligations, or any other impairment (whether intentional or negligent, by operation of law or otherwise) of the rights of the Customer's voluntary or involuntary bankruptcy, assignment for the benefit of creditors, reorganization, or similar proceedings affecting the Customer or any of its assets; or (h) any other action or circumstances which might otherwise constitute a legal or equitable discharge or defense of a surety or guarantor.

This Guaranty may be terminated upon delivery to you (at your address shown above) of a written termination notice from the undersigned. However, as to all Obligations (whether matured, unmatured, absolute, contingent or otherwise) incurred by the Customer prior to your receipt of such written termination notice (and regardless of any subsequent amendment, extension or other modification which may be made with respect to such Obligations), this Guaranty shall nevertheless continue and remain undischarged until all such Obligations are indefeasibly paid and performed in full.

The undersigned agrees that this Guaranty shall remain in full force and effect or be reinstated (as the case may be) if at any time payment or performance of any of the Obligations (or any part thereof) is rescinded, reduced or must otherwise be restored or returned by you, all as though such payment or performance had not been made. If, by reason of any bankruptcy, insolvency or similar laws effecting the rights of creditors, you shall be prohibited from exercising any of your rights or remedies against the Customer or any other person or against any property, then, as between you and the undersigned, such prohibition shall be of no force and effect, and you shall have the right to make demand upon, and receive payment from, the undersigned of all amounts and other sums that would be due to you upon a default with respect to the Obligations.

Notice of acceptance of this Guaranty and of any default by the Customer or any other person is hereby waived. Presentment, protest demand, and notice of protest, demand and dishonor of any of the Obligations, and the exercise of possessory, collection or other remedies for the Obligations, are hereby waived. The undersigned warrants that it has adequate means to obtain form the Customer on a continuing basis financial data and other information regarding the Customer and is not relying upon you to provide any such data or other information. Without limiting the foregoing, notice of adverse change in the Customer's financial condition or of any other fact which might materially increase the risk of the undersigned is also waived. All settlements, compromises, accounts stated and agreed balances made in good faith between the Customer, its successors or assigns, and you shall be binding upon and shall not affect the liability of the undersigned.

Payment of all amounts now or hereafter owed to the undersigned by the Customer or any other obligor for any of the Obligations is hereby subordinated in right of payment to the indefeasible payment in full to you of all Obligations and is hereby assigned to you as a security therefor. The undersigned hereby irrevocably and unconditionally waives and relinquishes all statutory, contractual, common law, equitable and all other claims against the Customer, any other obligor for any of the Obligations, any collateral therefor, or any other assets of the Customer or any such other obligor, for subrogation, reimbursement, exoneration, contribution, indemnification, setoff or other recourse in respect of sums paid or payable to you by the undersigned hereunder, and the undersigned hereby further irrevocably and unconditionally waives and relinquishes any and all other benefits which it might otherwise directly or indirectly receive or be entitled to receive by reason of any amounts paid by, or collected or due from, it, the Customer or any other obligor for any of the Obligations, or realized from any of their respective assets.

THE UNDERSIGNED HEREBY UNCONDITIONALLY WAIVES ITS RIGHT TO A JURY TRAIL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS BETWEEN US RELATING TO THE SUBJECT MATTER HEREOF OR THEREOF, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN US. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY OF CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). THIS WAIVER IS IRREVOCABLE MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, OR ANY RELATED DOCUMENTS. IN THE EVENT OF LITIGATION, THIS GUARANTY MAY BE FILED AS A WRITTEN CONSENT TO A TRAIL BY THE COURT.

As used in this Guaranty, the word "person" shall include any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization, or any government or any political subdivision thereof.

This Guaranty is intended by the parties as a final expression of the guaranty of the undersigned and is also intended as a complete and exclusive statement of the terms thereof. No course of dealing, course of performance or trade usage, not any paid evidence of any kind, shall be used to supplement or modify any of the terms thereof. Nor are there any conditions to the full effectiveness of this Guaranty. This Guaranty and each of its provisions may only be waived, modified, varied, released, terminated or surrendered, in whole or in part, by a duly authorized written instrument signed by you. No failure by you to exercise your rights hereunder shall give rise to any estoppel against you, or excuse the undersigned from performing hereunder. Your waiver of any right to demand performance hereunder shall not be a waiver of any subsequent or other right to demand performance hereunder.

This Guaranty shall bind the undersigned's successors and assigns and the benefits thereof shall extend to and include your successors and assigns. In the event of default hereunder, you may at any time inspect undersigned's records, or at your option, undersigned shall furnish you with a current independent audit report.

If any provisions of this Guaranty are in conflict with any applicable statute, rule or law, then such provisions shall be deemed null and void to the extent that they may conflict therewith, but without invalidating any other provisions hereof.

Each signatory on behalf of a corporate guarantor warrants that he had authority to sign on behalf of such corporation and by so signing, to bind said guarantor corporation hereunder.

IN WITNESS WHEREOF, this Guaranty is executed the day and year above written.

R & S TRANSPORTATION SERVICES, INC.

By:_____Robert J. Rhodes_____

Its:_____President_____

ATTEST:_____
Secretary/Assistant Secretary

## INDIVIDUAL GUARANTY

Date: X 03/22/00

ABC Bus Leasing, Inc.
25 4th Street N.W.
Faribault, MN 55021

To induce you to enter into, purchase or otherwise acquire, now or at any time hereafter, any promissory notes, security agreements, chattel mortgages, pledge agreements, conditional sale contracts, lease agreements, and/or any other documents or instruments evidencing, or relating to, any lease, loan, extension of credit or other financial accommodation (collectively "Account Documents" and each an "Account Document") to R.J. Rhodes Transit, Inc. , a Corporation, organized and existing under the laws of the State of  Pennsylvania  ("Customer"), but without in any way binding you to do so, the undersigned, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, does hereby guarantee to you, your successors and assigns, the due regular and punctual payment of any sum or sums of money which the Customer may owe to you now or at any time hereafter, whether evidenced by an Account Document, on open account or otherwise, and whether it represents principal, interest, rent, late charges, indemnities, an original balance, an accelerated balance, liquidated damages, a balance reduced by partial payment, a deficiency after sale or other disposition of any leased equipment, collateral or security, or any other type of sum of any kind whatsoever that the Customer may owe to you now or at any time hereafter, and does hereby further guarantee to you, your successors and assigns, the due, regular and punctual performance of any other duty or obligation of any kind or character whatsoever that the Customer may owe to you or at any time hereafter (all such payment and performance obligations being collectively referred to as "Obligations"). Undersigned does hereby further guarantee to pay upon demand all losses, costs, attorneys' fees and expenses which may be suffered by you by reason of Customer's default or default of the undersigned.

This Guaranty is a guaranty of prompt payment and performance (and not merely a guaranty of collection). Nothing herein shall require you to first seek or exhaust any remedy against the Customer, its successors and assigns, or any other person obligated with respect to the Obligations, or to first foreclose, exhaust or otherwise proceed against any leased equipment, collateral or security which may be given in connection with the Obligations. It is agreed that you may, upon any breach or default of the Customer, or at any time thereafter, make demand upon the undersigned and receive payment and performance of the Obligations, with or without notice or demand for payment or performance by the Customer, its successors or assigns, or any other person. Suit may be brought and maintained against the undersigned, at your election, without joinder of the Customer or any other person as parties thereto. The obligations of each signatory to this Guaranty shall be joint and several.

The undersigned agrees that its obligations under this Guaranty shall be primary, absolute, continuing and unconditional, irrespective of and unaffected by any of the following actions or circumstances (regardless of any notice to or consent of the undersigned): (a) the genuineness, validity, regularity, and enforceability of the Account Documents or any other document; (b) any extension, renewal, amendment, change, waiver or other modification of the Account Documents or any other document; (c) the absence of, or delay in, any action to enforce the Account Documents, this Guaranty or any other document; (d) your failure or delay in obtaining any other guaranty of the Obligations (including, without limitation, your failure to obtain the signature of any other guarantor hereunder); (e) the release of, extension of time for payment or performance by, or any other indulgence granted to the Customer or any other person with respect to the Obligations by operation of law or otherwise; (f) the existence, value, condition, loss, subordination or release (with or without substitution) of, or failure to have title to or perfect and maintain a security interest in, or the time, place and manner of any sale or other disposition of any leased equipment, collateral or security given in connection with the Obligations, or any other

impairment (whether intentional or negligent, by operation of law or otherwise) of the rights of the undersigned; (g) the Customer's voluntary or involuntary bankruptcy, assignment for the benefit of creditors, reorganization, or similar proceedings affecting the Customer or any of its assets; or (h) any other action or circumstances which might otherwise constitute a legal or equitable discharge or defense of a surety or guarantor.

This Guaranty may be terminated upon delivery to you (at your address shown above) of a written termination notice from the undersigned. However, as to all Obligations (whether matured, unmatured, absolute, contingent or otherwise) incurred by the Customer prior to your receipt of such written termination notice (and regardless of any subsequent amendment, extension or other modification which may be made with respect to such Obligations), this Guaranty shall nevertheless continue and remain undischarged until all such Obligations are indefeasibly paid and performed in full.

The undersigned agrees that this Guaranty shall remain in full force and effect or be reinstated (as the case may be) if at any time payment or performance of any of the Obligations (or any part thereof) is rescinded, reduced or must otherwise be restored or returned by you, all as though such payment or performance had not been made. If, by reason of any bankruptcy, insolvency or similar laws affecting the rights of creditors, you shall be prohibited from exercising any of your rights or remedies against the Customer or any other person or against any property, then, as between you and the undersigned, such prohibition shall be of no force and effect, and you shall have the right to make demand upon, and receive payment from, the undersigned of all amounts and other sums that would be due to you upon a default with respect to the Obligations.

Notice of acceptance of this Guaranty and of any default by the Customer or any other person is hereby waived. Presentment, protest demand, and notice of protest, demand and dishonor of any of the Obligations, and the exercise of possessory, collection or other remedies for the Obligations, are hereby waived. The undersigned warrants that it has adequate means to obtain from the Customer on a continuing basis financial data and other information regarding the Customer and is not relying upon you to provide any such data or other information. Without limiting the foregoing, notice of adverse change in the Customer's financial condition or of any other fact which might materially increase the risk of the undersigned is also waived. All settlements, compromises, accounts stated and agreed balances made in good faith between the Customer, its successors or assigns, and you shall be binding upon and shall not affect the liability of the undersigned.

Payment of all amounts now or hereafter owed to the undersigned by the Customer or any other obligor for any of the Obligations is hereby subordinated in right of payment to the indefeasible payment in full to you of all Obligations and is hereby assigned to you as a security therefor. The undersigned hereby irrevocably and unconditionally waives and relinquishes all statutory, contractual, common law, equitable and all other claims against the Customer, any other obligor for any of the Obligations, any collateral therefor, or any other assets of the Customer or any such other obligor, for subrogation, reimbursement, exoneration, contribution, indemnification, setoff or other recourse in respect of sums paid or payable to you by the undersigned hereunder, and the undersigned hereby further irrevocably and unconditionally waives and relinquishes any and all other benefits which it might otherwise directly or indirectly receive or be entitled to receive by reason of any amounts paid by, or collected or due from, it, the Customer or any other obligor for any of the Obligations, or realized from any of their respective assets.

THE UNDERSIGNED HEREBY UNCONDITIONALLY WAIVES ITS RIGHT TO A JURY TRAIL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS BETWEEN US RELATING TO THE SUBJECT MATTER HEREOF OR THEREOF, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN US. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND

STATUTORY CLAIMS). THIS WAIVER IS IRREVOCABLE MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, OR ANY RELATED DOCUMENTS. IN THE EVENT OF LITIGATION, THIS GUARANTY MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

As used in this Guaranty, the word "person" shall include any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization, or any government or any political subdivision thereof.

This Guaranty is intended by the parties as a final expression of the guaranty of the undersigned and is also intended as a complete and exclusive statement of the terms thereof. No course of dealing, course of performance or trade usage, nor any paid evidence of any kind, shall be used to supplement or modify any of the terms hereof. Nor are there any conditions to the full effectiveness of this Guaranty. This Guaranty and each of its provisions may only be waived, modified, varied, released, terminated or surrendered, in whole or in part, by a duly authorized written instrument signed by you. No failure by you to exercise your rights hereunder shall give rise to any estoppel against you, or excuse the undersigned from performing hereunder. Your waiver of any right to demand performance hereunder shall not be a waiver of any subsequent or other right to demand performance hereunder.

This Guaranty shall not be discharged or affected by the death of any of the undersigned, but shall bind their respective heirs, executors, administrators, and assigns, and the benefits thereof shall extend to and include your successors and assigns. In the event of default hereunder, you may at any time inspect undersigned's records, or at your option, undersigned shall furnish you with a current independent audit report.

If any provisions of this Guaranty are in conflict with any applicable statute, rule or law, then such provisions shall be deemed null and void to the extent that they may conflict therewith, but without invalidating any other provisions hereof.

THIS GUARANTY IS BEING EXECUTED BY THE UNDERSIGNED INDIVIDUALS IN THEIR OWN CAPACITY AND NOT AS A DIRECTOR, OFFICER, EMPLOYEE, OR REPRESENTATIVE FOR ANY CORPORATION OR OTHER ORGANIZATION.

WITNESS our hands on the day and year above written.

Signed in the presence of:

X _Carol Trojan_____
Notary Signature

Date: _March 22, 2000_

By: X _Robert J. Rhodes_____

Print Name: ___ Robert J. Rhodes _____

Address: ___ 2990 Doss Ave _____
___ AmBridge    PA   15003 _____

Telephone No.: _724 266  4322_

Social Security No.: ___ 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 _____

Notary Seal

Notarial Seal
Carol Trojan, Notary Public
Economy Boro, Beaver County
My Commission Expires Nov. 13, 2000
Member Pennsylvania Association of Notaries

(Sign and print your name only.)
(DO NOT add any title or corporate office.)

**CIVIL COVER SHEET**  C3-0530

JS 44 (Rev. 11/04)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS** U.S. Bancorp Equipment Finance, Inc., f/k/a U.S. Bancorp Leasing & Financial

**DEFENDANTS** R.J. Rhodes Transit, Inc. R&S Transportation Service, Inc. Rhodes, Robert J.

**(b)** County of Residence of First Listed Plaintiff Multnomah County, Oregon
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant Beaver County, Pennsylvania
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number) Dennis J. Lewis, William J. Labovitz, Lewis & Sargent LLC, 2793 Noblestown, Pittsburgh, PA 15205

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt. Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 28 U.S.C. Sec. 1332
Brief description of cause: Breach of lease agreement

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ Excess of $75,000
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY** (See instructions):
JUDGE _____ DOCKET NUMBER _____

DATE April 22, 2005

SIGNATURE OF ATTORNEY OF RECORD _[signature]_

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

JS 44AREVISED OCTOBER, 1993

## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

### THIS CASE DESIGNATION SHEET MUST BE COMPLETED

**PART A**

This case belongs on the (_____Erie_____Johnstown___x___Pittsburgh) calendar.
1.   ERIE CALENDAR - If cause of action arose in the counties of Crawford, Elk, Erie, Forest, McKean. Venang
     or Warren, OR any plaintiff or defendant resides in one of said counties.
2.   JOHNSTOWN CALENDAR - If cause of action arose in the counties of Bedford, Blair, Cambria, Clearfield or
     Somerset OR any plaintiff or defendant resides in one of said counties.
3.   Complete if on ERIE CALENDAR: I certify that the cause of action arose in _____ County and
     that the_____resides in_____County.
4.   Complete if on JOHNSTOWN CALENDAR: I certify that the cause of action arose in_____
     County and that the_____resides in_____County.

**PART B (You are to check ONE of the following)**
1.   ____ This case is related to Number_____Judge_____
2.   (x) This case is not related to a pending or terminated case.

**DEFINITIONS OF RELATED CASES:**

CIVIL: Civil cases are deemed related when a case filed relates to property included in another suit or involves the
same issues of fact or it grows out of the same transactions as another suit or involves the validity or infringement
of a patent involved in another suit
EMINENT DOMAIN: Cases in contiguous closely located groups and in common ownership groups which will
lend themselves to consolidation for trial shall be deemed related.
HABEAS CORPUS & CIVIL RIGHTS: All habeas corpus petitions filed by the same individual shall be deemed
related. All pro se Civil Rights actions by the same individual shall be deemed related.

**PART C**
1. CIVIL CATEGORY (Place x in only applicable category).
   1.   ( )   Antitrust and Securities Act Cases
   2.   ( )   Labor-Management Relations
   3.   ( )   Habeas Corpus
   4.   ( )   Civil Rights
   5.   ( )   Patent, Copyright, and Trademark
   6.   ( )   Eminent Domain
   7.   ( )   All other federal question cases
   8.   ( )   All personal and property damage tort cases, including maritime, FELA, Jones Act, Motor
             vehicle, products liability, assault, defamation, malicious prosecution, and false arrest
   9.   (x)   Insurance Indemnity, contract and other diversity cases.
   10.         Government Collection Cases (shall include HEW Student Loans (Education),
             VA Overpayment, Overpayment of Social Security, Enlistment Overpayment (Army, Navy, etc.),
             HUD Loans, GAO Loans (Misc. Types), Mortgage Foreclosures, S.B.A. Loans, Civil Penalties and
             Coal Mine Penalty and Reclamation Fees.)

I certify that to the best of my knowledge the entries on this Case Designation Sheet are true and correct

Date:__April 22, 2005__                     _____
                                            ATTORNEY AT LAW

**NOTE: ALL SECTIONS OF BOTH SIDES MUST BE COMPLETED BEFORE CASE CAN BE
PROCESSED.**